TRAVIS F. JONES ET AL. v. A. G. ROBB.

Decided March 21, 1904.

**1.—Trespass to Try Title—Joint Owners—Legal Title.**

A suit for the recovery of land is properly brought by a joint owner in whom the legal title is vested, and without the joinder of a co-owner having an equitable title only.

**2.—Same—Authority to Bring Suit.**

Evidence held not to show that a suit brought in 1866 in the name of the owner was brought without his authority.

**3.—Lis Pendens—Delay in Prosecuting Suit.**

What lapse of time would amount to negligence sufficient to defeat the force of the suit as a pending action is a question to be determined with reference to the circumstances of each particular case, and under circumstances here considered is held not sufficient.

**4.—Same—Change of Venue—Evidence.**

In view of a lapse of thirty-eight years, death of the parties interested in the transaction, and the almost total destruction of all the records bearing on the question, the testimony of a witness, as to declarations made at the time, was admissible to establish the bringing of a suit in a certain county and its transfer to another, and the presumption will be entertained that it was regularly made.

**5.—Same.**

By agreeing to a change of venue and thereby consenting to the removal of all the papers in a case, a litigant does not lose the right to invoke the rule of lis pendens.

**6.—Lis Pendens—Judgment—Parol Evidence.**

The papers in a suit having been destroyed, parol evidence was admissible to show that a judgment in favor of an intervener and against the claim asserted by a defendant was recovered by such intervener by agreement and in the interest of such defendant, and to explain thereby the effect of such judgment on the rights of a purchaser pendente lite.

**7.—Same—Agreed Judgment.**

A purchaser pendente lite is bound by the judgment subsequently rendered therein, though it was by agreement, unless collusive and invoked by one who was a party to or chargeable with notice of the collusion.

Appeal from the District Court of Harris. Tried below before Hon. Norman G. Kittrell.

*Masterson, Morris & Masterson,* for appellants.

*Bullitt & Louis, Spotts & Matthews, L. A. Carlton, Greer, Greer & Nall,* and *Greer & Minor,* for appellee.

GILL, ASSOCIATE JUSTICE.—This is an action of trespass to try title instituted by the appellants to recover of appellee the land described in the petition. The appellants claim an interest in the land as heirs and devisees of their ancestor, Josiah Taylor. The appellant W. J. Taylor claims an interest therein as a devisee of his mother, Carrie V. Taylor, surviving wife of Josiah Taylor. The appellee claimed the entire tract in controversy under three distinct chains of title: (1) Through a sale of J. M. Brandon as independent executor of the will of Josiah Taylor, deceased. (2) Through deeds from and under Charles L. Cleveland. (3) Through deeds from the heirs of W. T. Austin ex-

ecuted to one Lewis in satisfaction of a mortgage executed by W. T. Austin.

The appellants assail the deed from Brandon as executor under which appellee claims on the ground (a) of want of power in the executor to convey; (b) because made to a coexecutor, and (c) conceding the power to convey the decedent's interest he could not convey the community interest of Carrie V. Taylor, the surviving wife of Josiah Taylor.

To the appellant's prayer for title notwithstanding the deed from Brandon as executor the appellee pleaded stale demand and limitation of four years.

Such other contentions as are necessary to be considered in determining this appeal will be set out in their proper connection further on in this opinion.

A trial before the court without a jury resulted in a judgment for appellee. The facts are as follows:

In January, 1866, John P. Austin purchased 1000 acres of land out of the northern portion of the Stephen Jackson league in Hardin County. By this deed he in fact acquired only a three-fourths interest therein. Though the title was taken in his own name, his uncle W. T. Austin furnished half the money for its purchase and by an express prior agreement became the owner of an undivided half interest in the land thus acquired.

On the 16th day of February, 1866, Nathan Gilbert purchased this property from some of the heirs and surviving wife of Stephen Jackson, the original grantee. His deeds from the heirs were void, they being executed by married women and the certificates of acknowledgment being defective.

The Austins claim under a deed made by Stephen Jackson in his lifetime which appears to have effectively conveyed the interest of both himself and his wife.

In 1866 a suit was instituted in Hardin County in the name of John P. Austin against Nathan Gilbert for the recovery of this land. Nathan Gilbert voluntarily appeared therein, agreed to a change of venue to Liberty County, and thereafter died in July, 1866.

In August, 1866, Caroline A. Gilbert qualified as survivor of the community, but no further proceedings appear to have been had in the cause until February, 1870, when a judgment was rendered that John P. Austin recover the west 500 acres and Chas. L. Cleveland as intervener the east 500 acres of the 1000 acres then in controversy and that the Gilberts recover nothing, the costs being adjudged equally against Cleveland and Austin.

On December 31, 1866, John P. Austin sold and conveyed the entire land involved in that suit to W. T. Austin, who on the 22d of July, 1868, borrowed $2237.80 from Josiah Taylor and executed his note therefor, together with a mortgage on an undivided one-fourth interest in the 1000 acre tract.

On October 28, 1869, W. T. Austin executed a deed to J. M. Brandon, executor of the will of Josiah Taylor (who had in the meantime died testate), in satisfaction and discharge of the debt and mortgage.

Taylor's death occurred in August, 1868, and his will was duly probated in September of that year. By the will J. M. Brandon, Emzy Taylor and Carrie V. Taylor, the surviving wife, were appointed independent executors and joined in the application for the probate of the will. The will providing that either of the executors might act alone, neither Mrs. Taylor nor Emzy Taylor took any part in handling the estate, this task being left entirely to J. M. Brandon. The latter on April 15, 1875, conveyed the land to Emzy Taylor for a recited consideration of $4000 and an assumption on his part of certain costs incurred by the estate in certain litigation. Eleven years afterwards Emzy Taylor conveyed the land by deed of gift to Mrs. J. M. Brandon, his sister.

At the death of Josiah Taylor his estate consisted of community property of himself and wife, some separate property of his own, his wife being also the owner of some separate means.

That the mortgage by which the property in controversy was acquired was community property of Taylor and his wife is not questioned. Whether or not Josiah Taylor took the mortgage from W. T. Austin without actual notice of the pendency of the Austin-Gilbert suit is not made to affirmatively appear. The material portions of Josiah Taylor's will are as follows:

"Article 1. I will and bequeath to my three children, Euphrates, Florence Isabel, and Kate, each two thousand dollars gold. This bequest _ * * * is intended to be as well in full discharge and satisfaction of any and all claim or demand which they or either of them have or make for a share or shares of community property of my first wife as well as her separate property if any she had.

"Article 2. I will and bequeath to my wife Carrie V. Taylor the homestead and lots upon which we are residing in the city of Galveston, together with all and singular the household and kitchen furniture and bedding, and also one horse and buggy.

"Article 3. I will and bequeath unto my son William and to each child that may hereafter be born of my wedlock each two thousand dollars gold. The estate of my wife Carrie V. Taylor to be subjected to the payment of this bequest. * * *

"Article 4. I will that after the foregoing bequests are provided for the remainder of my estate to go to and be divided equally among all my children living and that may be born of my wedlock, and my wife Carrie V. Taylor, viz., the wife is to receive from that portion of my estate mentioned in this fourth article the same amount as one child receives, and in case of the death of either of my children the surviving child or children of such deceased take the share of such child or children's deceased parents per stirpes."

Article 6 imposes on the wife the maintenance and education of the minor children at her own expense and the care of their property without charge until they marry or leave her. .

By article 7 she is appointed guardian of their persons and estates.

Article 8 appoints the three hereinbefore mentioned executors to act without bond and independent of the courts.

Article 9 is as follows: "My and either of my executors are expressly authorized and requested to sell at public or private sale on such terms as either of them deem proper any and all of my real estate not in the city of Galveston or to partition the same among the heirs without the intervention of a court.

"Article 10. I desire it to be distinctly understood that whatever separate property my wife * * * may have at my death or whatever property may be in her name at my death shall remain and be held and enjoyed by her independent of the provision of this will and foregoing bequests."

The devisees mentioned in article 1 were children of the first wife of Josiah Taylor. W. J. or William Taylor (one of the appellants) was his only child by Carrie V. Taylor.

The property bequeathed to the wife in article 2 was community of Carrie V. Taylor and the testator.

The wife accepted under the will. She thereafter married F. A. Juny and thenceforth lived in Mississippi and Tennessee and died in 1897. By her will W. J. Taylor is the owner of whatever interest she may have had in the land at her death.

At the date of the deed from J. M. Brandon to Emzy Taylor all the bequests had been paid but the estate had not been partitioned among the devisees. It is not made to appear what disposition was made by the executor of the sum received for the conveyance. At the date of the conveyance the community debts had been paid.

Mrs. C. A. Brandon, who received a deed of gift to this land from Emzy Taylor, in 1886 by deed of part and power of attorney as to the remainder, conveyed the land to W. W. Cruse, who conveyed to T. J. Oliver and appellee holds by mesne conveyances from Oliver as an innocent purchaser for value without notice. The conveyance from Mrs. Brandon to Cruse was in her own name, her husband's name not appearing in the body of the instrument, but it was signed and duly acknowledged by both, the wife acknowledging as a married woman.

. In disposing of the questions involved on this appeal we will take them up in what appears to be their logical order without reference to the order of their presentation in the brief. While the facts are involved and intricate it is apparent from a careful inspection that if Taylor or his executor were in the attitude of purchasers pendente lite in the acquisition of the land under the mortgage from Austin then the appellee's title under the judgment in favor of Cleveland in the suit of Austin v. Gilbert is paramount.

Appellants under their contention that the doctrine of lis pendens can not be successfully invoked against the title of the Taylor estate presents the following objections:

1. The suit was brought by some unauthorized person in the name of John P. Austin without his knowledge.

2. In allowing it to stand upon the docket until 1870 after Nathan Gilbert's death, without making his legal representatives parties or otherwise pressing the litigation, it lost its force as a pending suit.

3. It is apparent from the face of the judgment that the claim of the Gilberts did not prevail therein either in whole or in part, but half of the land was recovered by Charles L. Cleveland, who intervened therein and set up his claim long after the date of the mortgage and the conveyance by Austin to Brandon as executor.

4. The suit was not instituted nor the judgment rendered in Hardin County, where the land was situate.

5. If it was instituted in Hardin County the venue was changed by agreement to Liberty County, which destroyed its force as notice of lis pendens.

To an intelligent disposition of these questions and certain collateral questions presented in this connection a more minute statement of the facts is necessary.

Upon the issue of whether the suit was brought by one having authority to bring it, John P. Austin testified in substance that he and his uncle, W. T. Austin, owned the land jointly and had other joint interests in lands in Texas. That his uncle was a lawyer living in Houston and Galveston. That he, John P. Austin, did not authorize the suit and never knew of it, but the relations of blood and business between him and his uncle were very close and he considered his uncle authorized to sue for the land. That his uncle had general charge of their joint business, and he, John P. Austin, shortly thereafter left the State.

There was no evidence that W. T. Austin did not institute the suit and the judgment of the court recites the appearance of the parties. The suit pended for four years and no one appears to have contested the right of the party representing the plaintiff to maintain it. It is questioned for the first time in this suit.

The court records of both Hardin and Liberty counties were destroyed by fire, but the minutes containing the judgment in the case of Austin v. Gilbert were preserved, as also an index of the Hardin County District Court docket. All the papers in the cause were destroyed. All the parties to the transaction except John P. Austin are long since dead.

Appellee sought and was permitted to show by W. F. Gilbert, a son of Nathan Gilbert, that his father in 1866 bought the land involved in the Austin-Gilbert suit, and when he came home he stated he had made the purchase and expected to be sued for it. That thereafter he learned from his father that the suit had been instituted, and that he

being anxious for the matter to be settled voluntarily appeared and answered. He also agreed to a change of venue to Liberty County and the venue was so changed. Witness does not give the reasons for the change. These things must have occurred in 1866, as Nathan Gilbert died in July of that year.

The index of the docket of the Hardin County District Court shows a suit of John P. Austin v. Nathan Gilbert and witness testifies that his father had no other suit against him.

On February 17, 1870, witness' mother, having theretofore qualified as survivor of the community, voluntarily suggested the death of Nathan Gilbert and made herself a party defendant. On the next day the judgment hereinbefore mentioned was entered, whereby John P. Austin recovered of the other parties thereto the west 500 acres of the 1000 acres there in controversy and Chas. L. Cleveland recovered the east 500 acres. It was adjudged in terms that the claims of the other parties to the land decreed to Austin was "without right or foundation" and that the claim of the other parties to the land so adjudged to Cleveland was "without right or foundation." The costs were adjudged equally against Austin and Cleveland.

It was further shown by the witness Gilbert that Chas. L. Cleveland, an attorney of high repute at that time, had been employed by his father to represent him in the litigation. That upon his father's death he continued to represent his mother in the winding up of the estate. That it was upon his advice that she qualified as survivor and made herself a party defendant and that he was her attorney representing her when the judgment was rendered. That he had no claim to any part of the land except by reason of a contract for part of the recovery in payment for his legal services. That it was by agreement with Mrs. Gilbert that the judgment was taken in his name and that the recovery was in fact in Mrs. Gilbert's right. That shortly after and in pursuance of the agreement made prior to the rendition of the judgment witness and Cleveland partitioned the land so recovered, giving 250 acres to one of the Jackson heirs, who was setting up some claim; 125 acres to Mrs. Gilbert, Cleveland retaining the remaining 125 acres. (The land in controversy in the present suit is a part of the 125 acres so retained by Cleveland).

Appellants objected to the answer of the witness John P. Austin to the effect that because of the relations of blood and business between him and his uncle the latter was authorized to bring the suit, the objection being that the answer was a legal conclusion. We are of opinion that in view of his entire testimony the answer was admissible. W. T. Austin held the equitable title to a half interest and had charge of this and other joint interests of himself and nephew. The answer added nothing to the force of his other testimony. The trial being before the court the answer if erroneous was harmless. We think W. T. Austin under the circumstances stated had authority to bring the suit.

It is further objected that if it be conceded that W. T. Austin had the right to bring the suit there is no evidence that he did. We are of opinion that since it appears that a person interested in the land and having the right to bring suits to protect his joint holdings was in Texas at the time that a necessity for a suit arose and such a suit being actually brought, it devolved upon appellant to show that the suit was brought without authority, and there is no evidence that W. T. Austin did not authorize it. The suit was properly brought in the name of John P. Austin, the legal title being in him at the time. W. T. Austin being dead and the records destroyed, we do not think the fact that John P. Austin, the joint owner, had no knowledge of the suit is sufficient under the circumstances to establish its unathorized maintenance by another. That the court and the other parties litigant were so imposed on is a surmise too improbable to be indulged after this lapse of time. This disposes of the first objection to the judgment.

The trial court found that the failure to press the suit between the years 1866 and 1870 was, in view of the disturbed condition existing at that time, not such negligence as to destroy the force of the action as a pending suit. We approve this as a complete answer to the second objection. What lapse of time would amount to negligence sufficient to defeat the force of the suit as a pending action is a question to be determined with reference to the circumstances of each particular case.

The confusion and disorganization existing in this State during the period in question was so universal and so well recognized as to call forth legislation suspending all statutes of limitation until March, 1870. The trial court properly took those facts into consideration in determining the issue of the negligence of the parties to that action in failing to press the suit to a conclusion at an earlier date.

The death of the party defendant did not abate the action, and there is good authority for the proposition that its force as a pending suit continues thereafter until lost by the laches of the litigants in failing to make new parties. Freeman on Judg., sec. 203.

The fourth and fifth objections to its effectiveness as lis pendens will be considered together with the objection to the evidence of the witness Gilbert upon the point.

In view of the lapse of time, the death of the parties at interest or taking part in the transactions, and the almost total destruction of all the records bearing upon the question, we think the evidence of W. F. Gilbert, as to declarations made by his father at the time, was admissible to establish the bringing of the suit in that county and its transfer to another. The witness' actual connection with the parties whose declarations he details, his actual participation in the partition accomplished by the execution of deeds by Cleveland, in connection with the further fact that nothing in the record reflects upon the truth of the declarations, but on the other hand is altogether consistent with them, render it safe to accept his statement as conclusive. Especially is this true in

view of the facts disclosed by the Hardin County index, the fact that the land was situate in Hardin County and that Nathan Gilbert was a resident of that county. After this lapse of time we think it ought to be presumed, even in the absence of Gilbert's testimony as to the agreement, that the venue was regularly changed to Liberty County. In the absence of opposing proof such proceedings are presumed to be regular. But upon this point appellants contend that by agreeing to the change of venue, and thereby consenting to the removal to another jurisdiction of all of the papers in the case which would have disclosed the nature and subject of the litigation, the right to invoke the rule of lis pendens was lost. In support of this contention two North Carolina cases are cited. Arrington v. Arrington, 114 N. C., 151; Spencer v. Creedle, 102 N. C., 102. We have not had access to the report of the case first cited, but in the part quoted in appellants' brief the court concedes that no authority has been found for the conclusion reached. The second case cited does not support the proposition, but discloses the fact that in that State there is a code provision for the filing of notice in counties other than that in which the litigation is pending.

In Burton v. Shafer, 7 Law. Rep. Ann., 812 (an Ohio case), the rule which unquestionably prevails in this State is announced, viz., that the suit in order to effect lands purchased during its pendency must be brought in the county where the land is situate.

We think the broad rule announced in Arrington v. Arrington, supra (if the opinion is quoted correctly), would be subversive of the policy upon which the doctrine rests. The general rule is that one buying land from a party who has put it in litigation in the county where it is situate must abide the result of the suit whether he becomes a party thereto or not. He, in effect, is charged with constructive notice of the pendency of the suit and its nature. A change of venue may become proper or necessary and is provided for by law. It is certainly illogical to hold that by taking advantage of that provision a litigant must abandon some other right—that his judgment will be thereby rendered less effective.

It seems to us more logical to hold that purchasers must be held to know that a change of venue may become a part of the history of any litigation, and so knowing must govern themselves accordingly. In this case the facts inducing the agreement and the change are not disclosed. No witness knows why it was done, and the order making the change is destroyed. We think after this lapse of time it ought to be presumed that the change was lawfully and regularly made.

In Punchard v. Delk, 55 Texas, 304, same case, 64 Texas, 360, it is held that a purchaser pendente lite is bound by the agreements made by his vendor in the course of the litigation. The change of venue in question here was made prior to the sales pendente lite.

We thus reach the third objection to this judgment as notice of lis pendens. As stated above the judgment expressly awards the part of the

land in controversy to C. L. Cleveland upon an intervention filed the day before the judgment and long after the date of the sales in question in this connection. That those claiming under Cleveland can not invoke the litigation for their protection unless Cleveland recovered by virtue of the right of Nathan Gilbert goes without saying. To avoid the force of this rule appellee adduced the evidence set out above to show that while the judgment was prima facie for his benefit to the exclusion of the Gilbert claim, it was in truth rendered thus in pursuance of an agreement between the defendant Mrs. Gilbert and the intervener. We have no doubt of the truth of the evidence or its sufficiency to establish that the Gilbert claim which had been present in the litigation from its inception was the basis of Cleveland's claim. That a reputable attorney would have intervened in a cause against the interest of his client while continuing to represent her, secure a judgment wholly defeating her, is inconceivable. That a respectable court would permit such a practice is equally beyond belief. It is shown in addition that Cleveland had no other claim, and soon after the rendition of the judgment recognized the interest of the Gilberts and of one of the Jackson heirs whose adverse claim doubtless induced the parties to give the judgment its form, to the end that a trusted and disinterested party might partition the property with reference to the trusts imposed by the prior agreement.

The point most strongly urged is that parol evidence is inadmissible to explain or vary the judgment.

A careful inspection of the judgment discloses that it is not necessarily inconsistent with the oral agreement shown. Such a judgment might properly have been rendered had Cleveland bought out the Gilbert claim and intervened in the suit.

The recital to the effect that the claim of John P. Austin and Mrs. Gilbert against the 500 acres adjudged to Cleveland is without right or foundation would be no less true if she had deeded him the land pending the suit. It seems to us that had the pleading of Cleveland been existent at the date of the trial in this cause and had shown that he prayed for judgment as the owner of the Gilbert claim it would have been clearly competent in explanation of the judgment. It follows that in the light of its loss the facts may be shown by parol. Freeman on Judg., sec. 273.

The evidence conclusively establishes that the Gilbert claim in fact prevailed to the extent of the 500 acres adjudged to Cleveland. In what way then can the form of the judgment affect the purchaser pendente lite?

It was not rendered when the rights were acquired, hence its recitals neither misled nor influenced him. It was the pending suit and the final prevalence in part of the Gilbert claim which is effective against him. With the private agreement between Cleveland and his client, Austin and his vendees had nothing to do.

In this connection it is further urged that it appears that the judgment awarding only part of the land to the plaintiff was an agreed judgment and that such a judgment will not bind a purchaser pendente lite. The judgment recites the appearance of the litigants and the hearing of proof, and it is not made to appear by parol or otherwise that it was rendered upon an agreement between plaintiff and his opposing litigants. But if this contention were true the rule could be enforced only between the parties or those having actual notice, and would not preclude a purchaser like appellee who bought for value without notice. Such a purchaser may safely take the recitals in the judgment at their face value. Such cases as Wolf v. Butler, 81 Texas, 86, illustrate the proper application of the rule that a compromise or collusive judgment can not affect a lis pendens purchaser. In that case the judgment was invoked by a party to the collusion, or at least chargeable with notice of it.

We are of opinion that appellee as the owner of the Cleveland title to the property in question rightfully recovered against the claimants of the Austin title whose ancestor was a purchaser pendente lite.

We do not decide the questions arising on the sale by the administrator as it is not necessary to the decision of the case. As required by law, we have found the facts upon every point in order that the parties may have the benefit of our fact conclusions in the further progress of this cause.

We are of opinion the judgment should be affirmed and it is so ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

Counsel for the appellants in this cause have filed a strong motion for rehearing and it has received at our hands a most careful consideration. While we concede the force of appellants' contention and are aware the questions are by no means free from doubt, we are not prepared to recede from our first conclusion.

Because it is necessary to correct a few slight inaccuracies of statement we deem it proper to add the following to what has been said in the main opinion.

First, as to the corrections, we were in error in stating that W. F. Gilbert testified in terms that his father appeared and *answered* in the suit before the change of venue from Hardin to Liberty County. We assumed that the witness' statement that he agreed to a change of venue included an appearance and answer. We are still of opinion that it included an appearance, and whether it also included an answer is not material to our conclusion. Voluntary appearance is equivalent to per-

sonal service.  21 Enc. of Law, 611; Hanrick v. Gurley, 93 Texas, 458.
The statement that Nathan Gilbert resided in Hardin County at the
time of the institution of the suit is also inaccurate.  He resided at the
time in Jefferson County.

Our statement that John P. Austin testified that his uncle, W. T.
Austin, had general charge of their joint business is misleading, as he
was not specifically placed in general charge until after the institution
of the suit.  We still believe, however, that the testimony of the witness
in its entirely supports the conclusion that W. T. Austin, by reason of
the business relations existing between him and John P. Austin and the
mutuality of interest in this and other property, had authority to bring
the suit.

We stated in the main opinion that W. F. Gilbert testified that his
father had no other suit against him.  We should have stated that the
witness said he knew of no other suit against his father and that he
had no other landed claim.  In this connection we are impressed with
the force of the facts upon which we predicated our conclusion that the
suit was originally brought in Hardin County.  The land was situated
there and the law placed the venue of the suit there.  Nothing appears to
indicate that it was instituted elsewhere by consent, but consent to a
change of venue is affirmatively shown.  Appellant contends that the
Hardin County index, even taken in connection with the witness' state-
ment that his father had no other landed interest, is without force,
because the index fails to disclose the nature of the suit and it may
have been some personal action against his father.  Ordinarily the venue
of a personal action against Nathan Gilbert would have been in Jeffer-
son County, where he resided.  It is as improbable that a personal action
would have been brought elsewhere as that the action for the land
would have been brought elsewhere than in the county where the land
lay.  Further than as stated the record is silent upon these points.
There is no opposing proof, and in view of the destruction of the records
there is no reason why the inferences indulged should not comport with
known probabilities.  The record proof by which the facts might have
been disclosed has been destroyed.  The witness testified that upon his
father's death he became the practical head of the family and assisted
his mother in managing the business of the estate.  He became cogni-
zant of the suit and its history through declarations by his mother and
Cleveland during the subsequent progress of that cause made in connec-
tion with the acts and preparation with reference to it, and actually
participated in the division of the proceeds of the litigation.  To deny
to appellee the force and effectiveness of these facts would be to hold
that the destroyed records could not be supplied by facts and circum-
stances.

In this connection appellants complain that the court erred in per-
mitting the witness Gilbert to testify, over objection, to the hearsay dec-
larations of his father to the effect that he had been sued for the land

35 Civ—18

in Hardin County and that he had consented to a change of venue. While in discussing the force of the proof and its sufficiency to sustain the court's finding we expressed the opinion that it was admissible, we did not develop the point because it was not up for decision.

The third assignment of error as interpreted by the first proposition presents the question whether the suit in Liberty County was lis pendens as to land in Hardin County. The second and last proposition under that assignment presents the contention that the change of venue by agreement destroyed its force as lis pendens. Nor is the point made anywhere else in the brief. Our opinion that it was admissible was based on the rule allowing declarations against interest and in derogation of title to be shown, the declarant being dead and the issue not being susceptible of proof otherwise. 1 Greenl. on Ev., sec. 109; 1 Wharton on Ev., sec. 226. But if the hearsay should have been excluded we are inclined to think that the facts not subject to objection on this ground were sufficient to establish the bringing of the suit in Hardin County. If this is sound then a regular change of venue would be presumed, which would include the presumption that the defendant had first been duly served or had entered an appearance. The proceedings of courts must be presumed to be regular until the contrary is shown. Wharton on Ev., sec. 1302, et seq.

Appellants press their contention that the change of venue by agreement destroyed the force of the suit as lis pendens in Hardin County. We have examined the case of Arrington v. Arrington, 19 S. E. Rep., 394, in connection with the other North Carolina case cited on the same point. The opinions disclose that in that State the law requires a notice of the filing of a suit to be prepared and filed in order to affect property by notice lis pendens, and it is expressly declared that the statute takes the place of the common law rule. While other expressions in the opinion sustain the contention of the appellants, we are still of opinion that those cases ought not to control the decision of the question before us.

The fact that there was no statute in force in this State at the date of the change of venue under which the court could be required to order a change except upon the ground that he was disqualified to try it does not alter the situation.

In Gillespie v. Redmond, 13 Texas, 9, the change of venue was by agreement. In Burnley v. Cook, 13 Texas, 586, the change of venue by agreement was upheld, it being ruled that the question of the right of the court to which it had been transferred to try the suit was not one of jurisdiction but of venue. In Rogers v. Watrous, 8 Texas, 62, and Taylor v. Williams, 26 Texas, 586, it is apparently held that a court to which a case has been wrongfully sent by change of venue has no jurisdiction to try it. But it is plain from a careful inspection of the opinions that no more was held than that a change of venue would not be upheld over a party's objection unless the facts authorized the change under the law.

The term jurisdiction was manifestly used in the sense in which it is applied to the right of a court over a person in a county other than that of his residence.

It follows, then, that the venue was changed, not by force of the law, yet lawfully nevertheless, by the action of the parties and the order of the court. Had not the records of the court been burned the same evidences of the nature and character of the action would have remained upon the records of the Hardin County District Court as if the venue had been changed by force of a law authorizing it and over the objection of one of the parties. It seems to us if the force of the suit as lis pendens would be preserved in the one case there is no sound reason why it should not remain in force in the other.

Appellants complain because we did not specifically pass on the fourth assignment, by which is sought to be questioned the admissibility of the testimony of the witness W. F. Gilbert to the effect that his father had agreed with Cleveland to give him a half interest in the land as a fee. The assignment is not followed by a proposition and the question is not otherwise made in the brief. We are unable to perceive, however, why the declarations of Cleveland as to the source and character of his title (being so manifestly against interest) is not admissible under well settled principles of law laid down by Mr. Wharton and Mr. Greenleaf cited above.

On the question of the admissibility of parol evidence to disclose the right in which the Cleveland recovery was had, we do not deem it necessary to add anything to what was said in the main opinion.

Appellants complain of our failure to find that Josiah Taylor was a bona fide mortgagee for value without actual notice of the pending suit. The proposition is advanced that because the appellee is claiming under the Taylor mortgage the recitals in the mortgage of a valuable consideration paid bind him, and proof of payment of a valuable and adequate consideration authorizes the inference that the mortgagee or purchaser was without actual notice of any claim superior to the right sought to be purchased or acquired. The doctrine is perhaps sound as to appellee's claim under the estate of Taylor, but he also claims an independent title, and the latter is the one upheld by this court against the Taylor title. To such a state of facts it seems to us the doctrine that the recital in the mortgage of a paid consideration is evidence of the fact does not apply. But however that may be, the question is one of legal inference rather than of fact, and it does not devolve on us to find one way or another upon the point. We have treated Taylor as a purchaser for value without actual notice.

Our holding that the suit was prosecuted with sufficient diligence between the death of Nathan Gilbert and the final judgment is assailed. It is apparent that what we said as to the suspension of limitation from 1861 until 1870 was misunderstood by counsel for appellants. We did not mean that because of the suspension negligence on the part of the

parties to that suit in failing to diligently prosecute was excused. We merely mentioned the legislation as a fact evidencing the general recognition of the disturbed conditions existing in this State during the pendency of that suit.

We do not deem it necessary to protract this opinion by discussing the motion further. We are of opinion it should be overruled and it is so ordered.

*Overruled.*

Writ of error refused.