Vester V. CLARK, Appellant,

v.

Ike P. TURNER, Appellee.

No. 8408.

Court of Civil Appeals of Texas,
Amarillo.

Feb. 4, 1974.

Rehearing Denied March 4, 1974.

Alton R. Griffin, Lubbock, for appellant.

Griffith & Brister, Crenshaw, Dupree & Milam, Cecil C. Kuhne, Lubbock, for appellee.

ELLIS, Chief Justice.

In this suit arising out of an automobile-pedestrian collision, the plaintiff, Ike P. Turner, sought recovery of damages for personal injuries sustained while he was

acting as a flagman on a highway construction project when he was struck by an automobile being driven by the defendant, Dr. Vester V. Clark. The defendant, now deceased, succeeded in this suit by the independent executor of his estate as defendant-appellant, has appealed from a judgment rendered on a jury verdict in favor of the plaintiff, also now deceased, with the community survivor and legal representative of his estate as the successor plaintiff-appellee. Affirmed.

This is the second appeal in this case. In the first trial of the case on January 25, 1966, the trial court rendered judgment that the plaintiff take nothing on the basis of the jury findings of negligence and proximate causation against both parties. On appeal of such first judgment in Turner v. Clark, 412 S.W.2d 707 (Tex.Civ.App. —Amarillo 1967, writ ref'd n. r. e.), in an opinion by Chief Justice Denton, in March, 1967, this court reversed and remanded the case on the ground that the jury's finding that the failure of the plaintiff Turner to keep a proper lookout was a proximate cause of the collision was contrary to the great weight and preponderance of the evidence. On January 10, 1969, a Suggestion of Death of Vester V. Clark was filed by appellee, and on the same date, the court entered an order that writ of scire facias issue to D. D. Mahon, Executor of the Estate of Vester V. Clark, requiring him to appear at the next term of court and then and there to defend the suit. Service of the writ of scire facias was issued on November 25, 1970, and served on such executor on November 30, 1970. On December 18, 1970, a pleading entitled Original Answer of the Estate of Vester V. Clark, signed by D. D. Mahon, "Executor of the Estate of Vester V. Clark, Deceased," was filed. The firm of John Watts, attorneys for plaintiff, Ike P. Turner, was permitted to and did withdraw·pursuant to order of the trial court dated and filed on March 26, 1971. Ike P. Turner, the plaintiff died on August 31, 1971. A Motion to Dismiss for Want of Prosecution, signed by D. D. Mahon, "Independent Executor of the Es-

tate of Vester V. Clark, Deceased" was filed on February 14, 1972. Such motion was overruled by the trial court on March 29, 1972. On August 24, 1972, Thomas J. Griffith, the attorney who replaced the plaintiff's former attorney, filed a Suggestion of Death of Ike P. Turner.. On August 30, 1972, the trial court ordered that such suggestion of death be entered of record and that the suit be continued in the name of Edith K. Turner, community survivor of the Estate of Ike P. Turner, as plaintiff.

The cause was tried before a jury for the second time on February 20, 1973. In this second trial the jury found acts or omissions of negligence against the defendant Clark with respect to failure to keep a proper lookout, regarding the application of brakes and failure to turn his vehicle to the left, and that each of such acts or omissions was a proximate cause of the collision. The jury further found that the plaintiff Turner did not fail to keep a proper lookout for traffic on the road at the point and on the occasion in question, and that his failure to step over to the side of the road when he saw the defendant's vehicle approaching was not negligence. The trial court entered judgment for the plaintiff on the jury's verdict, and from such judgment the appellant has brought this appeal on five points of error.

In appellant's first point of error, it is contended that the trial court erred in refusing to allow Durward D. Mahon, an attorney at law and independent executor of the estate of Vester V. Clark, deceased, to participate in the second trial on its merits. In the sequence of events, as reflected by the record, we note that in the first trial the defendant Clark was represented by the law firm of Cade & Bowlin. As previously indicated, the judgment in the first trial was reversed and the cause remanded for another trial, and subsequent to the defendant's death, the suit was continued against the defendant in the name of D. D. Mahon, Independent Executor of the Estate of Vester V. Clark, Deceased. Two

pleadings, Original Answer and Motion to Dismiss for Want of Prosecution, were signed "D. D. Mahon, Executor of the Estate of Vester V. Clark, Deceased," with no indication that they were signed by him as an attorney or as attorney for the Estate. All subsequent pleadings and instruments in behalf of the defendant, including Motion for New Trial and Direction to Clerk regarding instruments to be included in the transcript were signed by Alton R. Griffin as attorney for the defendant and did not contain the name or signature of Mr. Mahon as attorney or one of the attorneys for the defendant. It was admitted that Mr. Mahon was the executor of the estate of Doctor Clark and that pursuant to writ of scire facias issued he was served in this case as executor of the estate. Further, it was established that Mr. Mahon did not participate in the first trial and that during the second trial Mr. Griffin was lead counsel for the defendant. Further, Mr. Mahon recognized that Doctor Clark had coverage of $5,000 under a Texas standard automobile insurance policy containing the standard negotiation and litigation provisions and that Mr. Griffin was designated by the insurance company to handle the litigation in this case against the insured, Doctor Clark.

Apparently, the appellant's claim concerning Mr. Mahon's denial of the right to participate in the trial is based upon a certain incident occurring during the course of the trial. It appears from the record that at one point during the trial, Mr. Griffin, as appellant's attorney, requested that the attorneys be allowed to approach the bench. Pursuant to this request, the jury was retired to the jury room outside the hearing of the proceeding here involved, and the attorneys were asked to approach the bench. Mr. Mahon was told by the trial court that it wished only the attorneys in the case to approach the bench. After Mr. Mahon's insistence that he was an attorney for the Clark estate, the court recognized only Mr. Griffin as the attorney who would be permitted to approach the bench in behalf of the defendant.

Also, at this point, the court directed him not to ask Mr. Griffin any questions, and Mr. Mahon was not allowed to participate in this conference between the court and the attorneys. The appellant contends that Mr. Mahon had filed the answer for the estate of the defendant and filed and participated in the cause with respect to the defendant's motion to dismiss for want of prosecution and challenges the court's action in denying him the right to aid in the representation of the estate during the above mentioned conference in connection with the trial of the case on its merits. Further, the appellant argues that the trial court's refusal to allow Mr. Mahon to so participate was a denial of a fundamental right of a party to appear and be represented by an attorney of his own choosing, and that such denial constituted reversible error. In support of this contention appellant has cited the cases of Swartz v. Swartz, 76 S.W.2d 1071 (Tex.Civ.App.— Dallas 1934, no writ); Maeding v. Maeding, 155 S.W.2d 991 (Tex.Civ.App.—Galveston 1941, no writ); Yellow Transit Co. v. Klaff, 145 S.W.2d 264 (Tex.Civ.App.— Galveston 1940, no writ); Stefanov v. Ceips, 395 S.W.2d 663 (Tex.Civ.App.— Amarillo 1965, no writ), and Metts v. Waits, 286 S.W. 923 (Tex.Civ.App.—Austin 1926, no writ). We note that in those cases the judgment of the trial court was reversed on appeal on the basis that the record showed there was no participation by or presence of an attorney in behalf of one of the parties during the hearing or trial; on the other hand, the record in the instant case reveals that not only was the executor of the estate present, but such defendant was represented throughout the trial by Mr. Griffin, attorney of record. He admitted that Mr. Griffin was lead counsel for the defendant in the second trial and was designated by the defendant's automobile insurance carrier to handle the litigation; that Mr. Griffin did, in fact, handle all essential phases of the trial on its merits, including the reading of the pleadings, the voir dire examination of the jury, and interrogation of witnesses; that Mr. Grif

fin was an experienced trial attorney; and that he had no dissatisfaction with the manner in which Mr. Griffin handled the case. Further, he admitted that although he was not permitted to stand at the bench on the occasion of the conference above mentioned, he was able to hear the conversation between counsel and the court, and conferred and advised with Mr. Griffin during the course of the trial concerning various aspects of the case.

██ We hold that the appellant was denied no fundamental right because of the trial court's refusal to permit Mr. Mahon to approach the bench; rather, this action was in the nature of a discretionary administrative measure. It is recognized that the lead counsel when present has control in the management of the case unless a change is made by the party himself to be entered of record. Rule 8, Texas Rules of Civil Procedure. The judge has general control of the trial and the discretion in this regard is very great, and the exercise of such prerogatives and discretion will be reviewed only upon a showing of abuse. 3 McDonald, Texas Civil Practice § 11.20.1, at 193 (1970); Schroeder v. Brandon, 141 Tex. 319, 172 S.W.2d 488 (1943). Further, Rule 434, T.R.C.P. specifically provides that no judgment shall be reversed on appeal on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court is of the opinion that the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Also, it is well established that the burden is upon the appellant to show from the record as a whole not only that an error was committed, but that the error probably resulted in an improper judgment. Further, there is no showing that this particular instance of restriction upon communication between Mr. Mahon and lead counsel affected the outcome of the trial. Also, there is no showing that on any other occasion was there any impairment concerning Mr. Mahon's

communication with Mr. Griffin or that he was denied the right to present through lead counsel any contention or argument he may have desired to present on the matters pending before the court. From a review of the entire record, it is our opinion that there was no showing of abuse of the court's discretion or prerogative in regard to the management and control of the trial, and that there was no denial of a fundamental legal right or harm shown to the appellant as a result of the court's action in relation to the incident in question. In the absence of a showing of reversible error, the appellant's first point is overruled.

In appellant's second point of error, it is contended that the trial court erred in denying appellant's motion to dismiss for want of prosecution. In the closely related third point appellant complained of the court's denial of such motion to dismiss on the grounds that the appellee failed to prosecute the cause within the time prescribed by law.

██ When the judgment was reversed and remanded, the clerk was required to continue the cause on the docket with its original number for trial. Rule 369, T.R. C.P. The defendant, Doctor Clark, was then deceased and D. D. Mahon was the independent executor of the estate. Under the applicable provisions of Rule 152, T.R. C.P., scire facias was issued and served upon the executor requiring him to appear and defend the suit and upon service thereof the suit proceed against such executor. Also, the scire facias to require the executor to appear and defend was not a new action, but a process in the nature of an ordinary citation to an action previously instituted, 51 Tex.Jur.2d § 2, at 614, and it is not required that the substituted defendant file another answer to the plaintiff's petition when the decedent has previously filed an answer to the cause. Estate of Pewthers v. Holland Page Industries, Inc., 443 S.W.2d 392 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.). Thus, upon the substitution of the executor as defendant, the action proceeded, not as a new suit

dating from its revival against the executor as defendant, but as an action pending from the date of its original institution. McCampbell v. Henderson, 50 Tex. 601 (1879); 1 Tex.Jur.2d § 139, at 139.

Prior to the second trial of the instant case, the plaintiff died, and upon suggestion of death the court entered its order allowing the suit to be continued by his community survivor. This action had the legal effect of making the substituted party the plaintiff in the petition previously filed, Rule 151, T.R.C.P.; Parriss v. Jewell, 57 Tex.Civ.App. 199, 122 S.W. 399 (1909, writ ref'd).

The appellant contends that the record shows that this case should have been dismissed because of unreasonable delay on the part of the appellee in filing a suggestion of Doctor Clark's death and in causing issuance and service of writ of scire facias upon the executor. Also, the appellant insists that there was a lack of diligence in appellee's filing of the suggestion of plaintiff's death and substitution of the community survivor as party plaintiff in the case.

There is no express period of time within which the representative of a deceased defendant must be made a party in order that the suit may proceed and the parties be bound by the adjudication; however, an unreasonable delay after the decedent's death would defeat the right of revival by the statutory method. Hermann v. Higgins Oil & Fuel Co., 260 S.W. 1094 (Tex.Civ.App.—Galveston 1924, writ ref'd); Wootton v. Jones, 286 S.W. 680 (Tex.Civ.App.—Austin 1926, writ dism'd). Additionally, it is recognized that although there has been a suggestion of death of the defendant in a case, in the event that proper diligence is not used by the plaintiff to revive the action, the court would be authorized in dismissing the suit for want of prosecution. McCampbell v. Henderson, supra; Trahan v. Roberts, 48 S.W.2d 503 (Tex.Civ.App.—Beaumont 1932, no writ). Further, it has been held that, under some circumstances, long delay in being made a party by one entitled to do so may be considered as an abandonment of the suit, and a party who fails to prosecute a suit within a reasonable time when so entitled may charge that party with laches and thus bar the right to proceed with the suit. Hermann v. Higgins Oil & Fuel Co., supra. Also, the conduct constituting laches that will preclude the right to revive a suit must be determined by the circumstances of the particular case. Jones v. Robb, 35 Tex.Civ.App. 263, 80 S.W. 395 (1904, writ ref'd). Thus, the tenor of the holdings of the above cases demonstrates the significance of a lack of due diligence and failure to act within a reasonable time under the circumstances in determining questions of dismissal because of failure to substitute parties or for want of prosecution.

It is fundamental that a trial court has broad judicial discretion in dismissing a suit for want of prosecution, and the court's action in sustaining or refusing to sustain a motion to dismiss may be reversed only upon a showing of an abuse of such discretion. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85 (1957); Howeth v. Davenport, 311 S.W.2d 480 (Tex.Civ. App.—San Antonio 1958, writ ref'd n. r. e.); Pollok v. McMullen Oil and Royalty Co., 383 S.W.2d 837 (Tex.Civ.App.—San Antonio 1964, writ ref'd). In the present case, the record shows that following the reversal and remand after the appeal of the first judgment and the return of the transcript to the trial court, there were many motions, pleadings and activities, including the Suggestion of Death of the Defendant and Order thereon, Original Answer of the Estate of Vester V. Clark, Motion for Permission to Withdraw filed by original counsel for the plaintiff and the Order thereon, Motion to Dismiss for Want of Prosecution and Suggestion of Death of Plaintiff and Orders thereon. There is no showing that the case was ever passed or continued on the plaintiff's request. Although this case was not finally tried until February, 1973, the appellate

courts have sustained the trial court's denial of a motion to dismiss for want of prosecution in many cases which had been pending longer than this one and the decision upon such motion in each particular case was based upon the pertinent facts and circumstances.

Further, an examination of the record discloses that after the plaintiff's death, which occurred prior to the filing of the defendant's motion for dismissal, the defendant did not seek to procure the issuance of a writ of scire facias to require the heirs or administrator of the estate of the deceased to appear and prosecute the suit as authorized by Rule 151, T.R.C.P., which provides:

> "If the plaintiff dies, the heirs, or the administrator or executor of such decedent may appear and upon suggestion of such death being entered of record in open court, may be made plaintiff, and the suit shall proceed in his or their name. If no such appearance and suggestion be made at the first term of the court after the death of the plaintiff, the clerk upon the application of defendant, his agent or attorney, shall issue a scire facias for the heirs or the administrator or executor of such decedent, requiring him to appear and prosecute such suit. After service of such scire facias, should such heir or administrator or executor fail to enter appearance within the time provided, the Defendant may have the suit discontinued."

In the case of Shafer v. Smith, 262 S.W. 199 (Tex.Civ.App.—San Antonio 1924, writ ref'd), it was held that the delay of the plaintiff's heirs in making themselves parties by the administrator on close of administration did not entitle the defendant to an abatement of the suit when the defendant did not proceed against the heirs on scire facias, but permitted the suit to remain on the docket until the heirs amended their petition, since the defendant waived his right to dismissal and acquiesed in the delay. In Hermann v. Higgins Oil & Fuel Co., supra, it was held that the plaintiff's death and failure of his representative to appear voluntarily and be made plaintiff does not ipso facto cause discontinuance or abatement of the suit, for before the defendant is entitled to such discontinuance he must first procure issuance of scire facias. The defendant's failure to procure scire facias in this instance should be considered along with other circumstances pertaining to the delay in the final trial of this case.

The many circumstances relating to the bringing of this case to trial for a second time after the appeal, including the deaths of the parties, the withdrawal of appellant's original counsel, the conduct and activities of responsible persons relative to the substitution of parties in the case, along with the attendant problems resulting from these various occurrences and conditions not found in usual civil litigation, are entitled to careful consideration by the court in the exercise of its discretion concerning a decision on the motion to dismiss for want of prosecution. It is our opinion that it was not shown that the court abused its discretion in overruling the motion.

■ Appellant further contends that in any event the failure to file a suggestion of death and failure to issue service to the estate of the defendant after the return of the mandate constituted a failure to prosecute the suit with such diligence as is necessary to toll the statute of limitations. In support of such contention, the appellant has cited the cases of Reed v. Reed, 158 Tex. 298, 311 S.W.2d 628 (1958); Buie v. Couch, 126 S.W.2d 565 (Tex.Civ.App.—Waco 1939, writ ref'd), and Adams v. Slattery, 156 Tex. 433, 295 S.W.2d 859 (1956). We note that these cases deal with cases originally filed pursuant to Rules 22 and 99, T.R.C.P., dealing, respectively, with the *commencement* of a suit by the filing of a petition in the office of the clerk and the obligation of the party to secure prompt issuance and service of process. These cases support the proposition

that the mere filing of the original suit does not interrupt the running of the statute of limitations, and further that the plaintiff must not only file the original suit within the statutory period, but there must also be a bona fide intention that process be issued and served and a showing that "due diligence" has been exercised in securing issuance and service of process upon the defendant. Further, these cases deal with the original "commencement" of a suit and do not deal with a situation in which a suit has been duly filed, tried, a judgment entered, an appeal prosecuted and the judgment reversed and remanded by the appellate court for another trial such as the case at bar. As pointed out in the forepart of this opinion, when a judgment has been reversed and remanded, the clerk must continue the cause on the trial docket under its original number. Further, upon death of a party, the legal representative is substituted as party plaintiff or defendant, as the case may be, Rules 151 and 152, T.R.C.P., and the action proceeds not as a new suit dating from its revival but as an action pending from the date of its original institution. Thus, it is our opinion that the holdings in the cases relied upon by the appellant are inapplicable in the instant case.

In the case of McCampbell v. Henderson, supra, which involved the questions of diligence in the substitution of parties and prosecution of the cause, wherein limitations had been asserted as a defense, the Supreme Court stated:

". . . while there may have been a want of proper diligence in reviving the case against the heirs, we are not prepared to say that the court erred in not dismissing the case, or holding that it had abated for want of parties of its own motion, or even if an objection of this character had been interposed by appellee; and it is obvious, from what has been previously said, *the plea of the statute of limitation presented no valid defense, as the suit when revived must be regarded as pending from the date of its original institution.*" (emphasis added)

In view of the foregoing, we cannot agree with appellant's contentions that the prosecution of this suit is barred by limitations or the court erred in failing to dismiss the cause for want of prosecution. We overrule appellant's second and third points of error.

In the fourth and fifth assignments of error, the appellant asserts "no evidence" and "contrary to the overwhelming preponderance of the evidence" points regarding the jury's finding, in response to Special Issue No. 7, that the plaintiff Turner did not fail to keep a proper lookout "for traffic on the road at the point and on the occasion in question." In view of these contentions, we shall review the evidence relating to the collision.

The accident testimony of Doctor Clark, Ike P. Turner and W. H. Rodgers, all deceased at the time of the second trial, consisted of testimony previously given either by deposition or as a witness in the first trial. The record discloses that the collision occurred on an open highway which ran in a northerly-southerly direction. The defendant, Doctor Clark was proceeding in a northerly direction, and at the point of the accident the highway was under construction. The plaintiff Turner was performing duties as a flagman on the construction project at and prior to the time of the collision. In this capacity he would signal for traffic to stop when necessary for road equipment to cross the highway. It is undisputed that various signs were posted along the side of the highway facing the defendant as he proceeded northerly prior to the collision, including signs reading "Slow," "Construction, Drive Carefully," "Observe Warning Signs State Law," "Speed Zone Ahead," and "Speed Limit 35." These signs were posted for at least 200 yards back before the collision occurred, and Doctor Clark admitted that he saw the signs as he came along the high-

way. He testified that he reduced his speed when he saw the signs and estimated that he was travelling about 5 miles an hour immediately prior to the collision. Further, he admitted that he was watching a grader as it crossed the road and that he never saw Turner until the time of the impact. Also, Doctor Clark testified that he did not see Turner because of dust caused by the grader.

Another witness, W. H. Rodgers, testified that he was driving his automobile ahead of Doctor Clark and had passed Turner who was standing at the edge of the pavement with a flag in his hand. When Rodgers heard the impact of the collision, he was approximately 150 feet away from Turner. He glanced in his rearview mirror and saw Turner on the hood of the Clark vehicle with the flag in his hand. Further, Rodgers testified that the visibility was clear as he looked back to the scene of the collision. He also testified there was no grader in the road when he came along and he never saw any grader on the paved position of the highway when he looked back. Another witness near the scene at the time of the collision· was V. O. Holly, the job superintendent of the construction project. He testified that he was some 50 to 60 feet away from Turner when the collision occurred, and that he was walking away from Turner and had occasion to observe the Clark vehicle as it approached Turner. He further testified that he noticed that the driver of the Clark vehicle was watching the construction taking place on the "header bank," an earthern fill located approximately 27 to 30 feet above the road surface. Also, Mr. Holly testified that the construction activity then in progress would cause but "very little" dust in the air and no interference with vision; that Turner was an experienced and capable flagman; and at the time in question he was in a good position insofar as being out where the motoring public could see him. Turner testified that there was a film of dust but that it did not affect visibility, and that at the time of the collision he was

standing about 3 feet from the edge of the road facing oncoming traffic, which was ˙the customary position and place for him to be in performing his job as a flagman. Also, Turner testified that at the time of the collision he was performing the normal duties of a flagman which included stopping the traffic and watching the construction equipment in crossing the highway in order to protect not only the public from the equipment, but also the men on the construction equipment. He described the flag he had in his hand at the time of the collision as being red, about 18 inches square, and attached to a pole approximately 3 feet in length. While standing in the customary place for a flagman to stand, Turner stated that he saw the Clark automobile 150 to 200 feet away, approaching at a normal speed, and gave Clark a signal to stop since the scrapers had just come down the shoulder off the pavement to the north to cross the road and unload dirt on the shoulder. The signal was given by holding the flag outward with his right hand while holding his left hand up. He then testified that he "glanced back" behind him to see if the scrapers had crossed the highway, and when he looked back around, the defendant was only about 10 or 12 feet away from him. He stated that "I guess I just froze," and that the defendant's automobile struck him. Also, Turner testified that after he signaled for Clark to stop, he supposed he was going to stop, and he had no reason to believe he was not going to stop. In this connection, Turner testified that he had flagged down several other motorists that morning and they had all stopped.

The appellant asserts in connection with his contention that the evidence does not support the jury's finding that Turner did not fail to keep a proper lookout, that at the rate of 5 miles per hour, Doctor Clark's estimated speed at the time of the collision, it would have taken the Clark vehicle 20 to 30 seconds to travel the distance between the point where Turner first saw the vehicle (150 to 200 feet away from the point of impact) to the point where he

again saw it (10 to 12 feet from the point of impact). It is contended that this 20 to 30 seconds is the amount of time consumed by Turner's backward "glance" to see if the scrapers had crossed the highway. In connection with this contention, the appellant apparently refers to a statement in the original opinion in this case reported at 412 S.W.2d 707, 710, to the effect that at Clark's estimated speed of 5 miles per hour, he would have travelled 7.3 feet per second. The full statement reads: "Clark estimated his speed immediately prior to the collision to have been approximately 5 m. p. h. At this slow speed he would have travelled 7.3 feet per second, thus Turner would have had less than two seconds from the time he glanced back to take evasive action to avoid being struck." In this connection, the jury had found that Turner's failure to step over to the side of the road when he saw the defendant's vehicle approaching was not negligence. It is obvious that the court's calculation is based upon Turner's testimony in the first trial (introduced in evidence in the second trial) wherein he stated: "I glanced around to see if our scrapers had crossed the road, and *when I turned back* he was about ten or twelve feet in front of me." (emphasis added). Thus, the calculated rate of 7.3 feet per second has reference to the last 10 or 12 feet travelled in less than 2 seconds at the rate of 5 miles per hour and cannot be properly applied to the entire distance travelled by the Clark vehicle from the point some 150 to 200 feet back where Turner first saw the vehicle until he again saw it immediately prior to the collision. Further, Turner testified that at the time he saw the Clark vehicle 150 to 200 feet away it was travelling at "normal" speed. Doctor Clark testified that when he saw the construction signs he slowed to around 20 or 25 miles per hour, "whatever it said there," and further stated "If it said 20, or 30, I slowed up to . . . ." Also, during the time he was watching the grader he was "slowing up," and at the time of the collision he was travelling about 5 miles per hour. There is no testimony as

to how long Doctor Clark travelled at the rate of 5 miles per hour, but the evidence indicates that he had slowed down to that speed just prior to the collision. We hold that there is some evidence of probative force to sustain the jury's finding. Also, the jury is entitled to consider the testimony in the light of all the circumstances and to weigh all of the factors involved in making its finding as to whether Turner kept "such a lookout as a reasonable and prudent person, in the exercise of ordinary care, would have used under the same or similar circumstances."

The appellant has cited the case of Plata v. Gohman, 359 S.W.2d 163 (Tex.Civ.App. —San Antonio 1962, writ ref'd n. r. e.) in support of the contention that the plaintiff failed to keep a proper lookout. That case points out that under the evidence a fact issue in the matter of lookout was submitted for the jury. Further, in that case it is not indicated that the plaintiff ever saw the defendant which would be most significant in connection with evidentiary support with reference to the matter of proper lookout on the part of the plaintiff. Here, there is evidence that the plaintiff saw the defendant, flagged him to stop and concluded under the circumstances that defendant would stop as other motorists had stopped, and as a part of his employment and customary practice as a flagman, glanced back to see if the equipment had crossed the road, and then upon looking back, the defendant's automobile struck him without the reasonable possibility of evasive action. It is our opinion that this case is sufficiently distinguishable from *Plata* on the basic facts and circumstances with respect to evidentiary support on the lookout issue. Further, it is our opinion that whether, under the facts and surrounding circumstances, the appellee's "glance back" to see if the equipment had crossed the highway before he looked back around was of such duration as to constitute the failure to keep a proper lookout was a question for determination by the jury.

The jury as the trier of the facts is the exclusive judge of credibility and weight of the testimony given and it is entitled to draw all reasonable inferences therefrom in light of all the circumstances. The jury may believe the testimony of one witness and reject that of another witness, and it may reach its conclusion by blending all of the evidence before it. Martin v. Gurinsky's Estate, 377 S.W.2d 710 (Tex.Civ.App. —Austin 1964, writ ref'd n. r. e.).

From a review of the testimony, the surrounding circumstances and reasonable inferences therefrom, it is our opinion that there is ample evidentiary support for the jury's finding that the plaintiff Turner did not fail to keep a proper lookout for traffic on the road at the point and on the occasion in question, and that such finding is not contrary to the overwhelming preponderance of the evidence. Appellant's fourth and fifth points are overruled.

Also, it is here noted that in appellant's supplemental brief, as part of the statement and argument set out under appellant's fourth and fifth points, the appellant asserts as an additional point of error "that the trial court erred in failing to grant a new trial because there was no evidence in this case, or alternatively insufficient evidence, to support the jury findings that Dr. Clark was negligent in failing to keep a proper lookout, failing to apply brakes, and failing to turn to the left; and that such negligence was the proximate cause of the accident in question." Although the "additional" point is multifarious in nature, in view of the liberal construction accorded briefing rules, we have considered the evidence relating to the issues concerning Doctor Clark's failure to apply proper lookout and failure to take evasive action on the occasion in question.

In the forepart of this opinion we have reviewed all of the significant circumstances and testimony pertaining to the conduct of Doctor Clark, along with that of Mr. Turner, in connection with the collision here involved. In view of all the surrounding circumstances and the evidence to the effect that Doctor Clark saw the various warning signs concerning the construction project ahead, that he was watching certain construction activities above the road, and not until just after the impact did he ever see Turner, who was in a proper position for approaching motorists to see him as he performed his functions as a flagman, it is our opinion that there is ample evidentiary support to sustain the jury's finding that Doctor Clark failed to keep a proper lookout on the occasion in question and that such failure was a proximate cause of the collision. In view of the basic finding of his failure to keep a proper lookout, it is reasonable to conclude that he could not have seen Turner in time to take evasive action. Thus, it is our opinion that there is no evidence, or in any event, insufficient evidence, to support the jury's findings regarding the defendant's failure to apply brakes or turn his vehicle on the occasion in question. Polasek v. Quinius, 438 S.W.2d 828 (Tex.Civ.App.— Austin 1969, writ ref'd n. r. e.).

In view of our sustaining the jury's findings that the defendant was negligent in failing to keep a proper lookout, that such negligence was a proximate cause of the collision, and that the plaintiff did not fail to keep a proper lookout, the previous adjudication of liability against the defendant under the trial court's judgment is not affected. Accordingly, the judgment of the trial court is affirmed.