NANCY L. WEAVER, Appellant, v. J. S. STACEY.

**Parol Variance:** RETURN ON EXECUTION. In an action for the wrongful sale of tax certificates on execution, the officer's return was to the effect that he had "sold certificates * * * to the amount of $116 30." *Held*, that parol or documentary evidence of the number sold, for which recovery was sought, what they sold for, and their actual value, did not contradict the return, but proved facts with regard to which the return was silent, and was therefore competent.

**Voluntary Payments:** PENDENTE LITE. Money voluntarily paid to redeem property sold under a decree which is thereafter reversed cannot be recovered.

RULE APPLIED. One whose property was sold under execution against another and who redeems from the sale, cannot recover the surplus arising from the sale, which was applied to a second execution, from the holder of such execution, although the sale was.

made pending an appeal from a decree subsequently reversed which adjudged the property subject to the executions.

**Assignment:** CONSTRUCTION. An assignment of a claim arising from an erroneous decree subjecting property to judgment liens was "for property taken and money paid as costs, and * * * to redeem from sale made under * * * a decree entered" in an equity suit named. *Held*, that this language sufficiently expressed an intent to assign claims arising out of execution sales on judgments made liens by the decree, on the property sold

*Appeal from Jones District Court.*—HON. WILLIAM P. WOLF, Judge.

· SATURDAY, MAY 21, 1898.

ACTION to recover the value of certain property wrongfully sold on execution. The cause was tried to a jury, that returned a verdict for plaintiff for two hundred and sixty-one dollars and forty-seven cents, and, from a judgment thereon, both parties appealed. *Affirmed* on defendant's appeal and *reversed* on plaintiff's *appeal.*

*Hubbard, Dawley & Wheeler* for plaintiff.

*F. O. Ellison* and *J. S. Stacy* for defendant.

GRANGER, J.—I. We will first consider the case on plaintiff's appeal. In 1889 an equity cause was tried in which the defendant J. S. Stacy and others were plaintiffs, and Nancy L. Weaver, plaintiff, and others, were defendants, in which suit the district court adjudged that certain property of plaintiff and F. D. Weaver was subject to the payment of debts of one D. Weaver. On appeal to this court, the judgment was reversed, and said property was held not subject to such payments. (87 Iowa, 72.) Pending the appeal in this court, Stacy took execution, and sold certain of the property held by the district court, as subject to such debts, and

received the proceeds thereof. Such sales being wrongful, this action is brought to recover the value of the property so sold. The proceeding in which the property was sold was Jamison v. Weaver, and is spoken of as the "Equity Suit." Of the property sold for which recovery is sought in this action, were certain tax certificates. There were seventy-nine of such certificates levied upon, and all of them had been previously levied upon by virtue of other executions in favor of other parties to the equity suit. The plaintiff in this suit put in evidence the sheriff's return on the execution on which the sale was made for which recovery is now sought. This return shows a levy upon the seventy-nine tax certificates, and then as follows: "I sold tax certificates to apply on this execution to the amount of $116.30. I sold each tax certificate separately. Then I sold real estate enough to satisfy the balance of this execution." As to such execution, the court said to the jury: "As to the item No. 2 for the value of 79 tax certificates levied on in the case of Stacy, assignee, against D. Weaver, you are instructed that as the certificates sold have not been identified, and therefore the value could not be shown, you can only find on that item the amount for which such certificates were sold and applied on said execution, to-wit, the sum of $116 30-100, together with interest thereon from February 13, 1890." It appears that the actual value of the seventy-nine certificates was one thousand, two hundred and sixty-five dollars. Plaintiff offered to prove by witnesses how many certificates were sold for which recovery, is now sought, what they sold for on execution, and their actual value, which the court refused, on the ground that such proof would contradict the officer's return. It will be seen from the instruction quoted that no more than the amount for which the certificates sold could be recovered, because they could

not be identified, and therefore the value could not be shown. The objection to the offered evidence is that the return was the best evidence. The argument is upon the theory that the testimony would contradict the return. Looking to the return, it will be seen that it is silent as to the number of certificates sold, or their value. It simply shows that enough were sold to realize one hundred and sixteen dollars and thirty cents at the prices offered. There is no attempt whatever to dispute that. No result of the offered evidence would change the fact shown by the return. It would simply show what the return does not—the number of certificates sold on the execution and their actual value. In Freeman on Executions (volume 2, section 364) after stating the general rule that neither party can dispute or impeach the officer's return, and that the officer will not be permitted, when called as a witness, to give testimony contradicting or impeaching his own return, it is said: "The return may be ambiguous, or may not be so specific as to show all the acts done by the officer. In such a case the evidence may properly be received in explanation of the return, or to establish the existence of facts of which the officer omitted to make any sufficient statement." If it is to be said that the matters which plaintiff sought to prove are of the kind required to be stated in a return—which we do not decide—still, under the rule given, parol proof of them was proper, because they had been omitted from the return. We have not seen any authority against such a rule, but understand it to have general support. Some authorities are cited to show that a return cannot be attacked in a collateral proceeding. The proposed testimony in this case is not an attack on the return. The verity of the return is conceded. The case of *West v. St. John*, 63 Iowa, 287, is where there was an attempt to prove the fact of a return by a copy or by parol,

without showing the return to have been lost or destroyed. The case presents an entirely different question. The case of *Smith v. De Kock*, 81 Iowa, 535, is nearer in point and permits the use of evidence to show what did not appear in the return. The offered evidence should have been admitted.

II. Some executions, which had been levied on the certificates before the one in the Stacy Case, were put in evidence by defendant, with the returns thereon, evidently to show that some of the tax certificates had been sold on those executions; and by the returns it so appeared, but not how many, and plaintiff objected to the evidence for the reasons stated by defendant to the evidence offered by plaintiff for a similar purpose, the only differences being that in one case the evidence was by parol, and in the other case documentary. We think plaintiff's objections are of the same legal force as those of defendant and no more. In this case, as in the other, it was an attempt to make appear, by other evidence what did not appear by the return, but not to in any way contradict or change its legal effect. If such evidence could not be used—we mean evidence to show what did not appear by the return—then the conclusion must be that defendant would be liable for the value of the seventy-nine certificates, because all were levied upon by direction of defendant, and none are returned or accounted for as unsold, and hence the presumption would be that all were sold. To avoid such a conclusion, defendant offered evidence against it, which was properly admitted. Defendant's liability is for the actual value of the certificates sold, and evidence for their identification and to show their value is proper.

III. Certain real estate had been sold on what is known as the "Sheehan & McCarn execution," and there remained a balance of one hundred and fifty-one

dollars and sixty cents, which the sheriff applied on the Stacy execution, and it is an item for which recovery is sought in this case. The court, by its instructions, took such item from the consideration of the jury, because it came from an interest in real estate, as we understand, not belonging to plaintiff. The basis of plaintiff's claim is that she had paid money to redeem the land, and hence had a right to the surplus. To that part of the petition there was a demurrer, which the court sustained, and on appeal to this court the ruling was affirmed. (93 Iowa, 683.) The holding was that there could be no recovery for the money paid for redemption. To permit a recovery of this surplus would be to permit a recovery for the redemption money. We think the ruling on the demurrer is conclusive of plaintiff's right in this respect.

IV. We now notice defendant's appeal. As to the property for the sale of which there can be a recovery, plaintiff's right of action depends on an assignment to her thereof by F. D. Weaver, which is in writing. The equity action above referred to was brought by four judgment creditors of D. Weaver, to subject property in the hands of plaintiff, F. D. Weaver, to the payment of such judgments; and the district court, as we have said, gave judgment for the plaintiff, and then executions were taken on the previous judgments, and also for costs in the equity case. F. D. Weaver, in his assignment to plaintiff of his claims, specified them as "for property taken and for money paid as costs and money paid to redeem from sales made under and by virtue of a decree entered in the district court of Jones county," and then follows what would identify the equity case. At the close of the evidence, defendant moved for judgment in his favor, on the ground that the assignment, because of its reference to the equity case, did not assign claims arising out of

sales made on executions issued on other judgments.
The question turns on the intent to be gathered from
the assignment itself.   In a sense, the sales were made
"under and by virtue of a decree" entered in the equity
case.   That decree subjected the property to the pay-
ment of the judgments, and then executions were taken
on the judgments.   The intent of the parties should
obtain, as it is clearly manifest.   On defendant's appeal
the judgment is AFFIRMED.   On plaintiff's appeal it is
REVERSED.