In the Matter of the Estate of Wilhelmina Burmaster,
Deceased, Final Report.

Estates of decedents: LIFE ESTATE: DISTRIBUTION: EVIDENCE. In this
1   action by the children of a husband's first wife against the executor of his second wife, who took a life estate under the husband's will, with the remainder to his children by his first wife, the record of the probate proceedings of the husband's estate is held to show that the property assigned to the widow was so assigned as property of the husband, and not as her separate property which had been in the husband's possession.

Words and phrases: TERM "SETTLED." The term "settled" as used
2   in the record of a suit is evidence of a settlement of the litigation but not of an adjudication, in the absence of other qualifying words.

Evidence: CONTRADICTION OF RECORD. In an appropriate case oral evi-
3   dence may be received to explain a record entry, but it is not admissible to contradict the record.

*Appeal from Chickasaw District Court.*—Hon. A. N. Hobson,
Judge.

Saturday, April 12, 1913.

Proceedings in probate. The decedent was the widow of Fred Burmaster. The petitioners are the children of Burmaster by a previous marriage. The interveners, who joined with the executor, are the children of the decedent by a previous marriage. The petitioners averred in their pleading that the estate in the hands of the executor was property which the decedent had acquired under the will of her husband, Burmaster, and that she had only a life estate therein, and that by the terms of the will of her husband, Fred Burmaster, it was provided that after her death one-half of such property should go to his children by his previous marriage, and the other one-half thereof should go to her children by her previous marriage. It was averred that the amount of the estate in the present executor's hands, to be thus divided, was $2,800, and an order was prayed that the executor be ordered to pay $1,400 to the petitioners. The petition was denied by the executor in its essential features, and it was averred by him that the property in his hands was the absolute property of the decedent, and that the petitioners had no claim thereon. There was a trial to the court without a jury. The trial court found for the petitioners, and awarded them $1,267.50. The executor and the interveners appeal.— *Affirmed.*

*M. E. Geiser,* for appellant executor.

*R. Feyerbend,* for appellant interveners.

*Smith & O'Connor,* for appellees.

Evans, J.—In October, 1891, Wilhelmina Drewelow was married to Fred Burmaster. Each had a family of children by previous marriage. Each had some property. In December, 1894, the husband died, leaving a will. By the provision

of such will he gave all of his property, both personal and real, to his wife, Wilhelmina, "for her use and benefit during her natural life." By another paragraph he provided that after the death of Wilhelmina the property should be divided as follows: "One-half to the heirs of Wilhelmina Burmaster [naming them] and the other one-half to go to my children [naming them]." By such will Charles Burmaster, a son, was named as executor, and his compensation as such was fixed at $300. The will was duly probated and such executor appointed. The executor filed an inventory of the property, consisting wholly of promissory notes, amounting to a sum total of approximately $3,900. Subsequently he reported to the court that notes amounting approximately to $900, included in his inventory, were the property of one Henry Drewelow, an insane person, and he obtained authority to turn over such notes to the guardian of such incompetent. After the expiration of twelve months and before the May, 1896, term of the court, he gave due notice of his final report, and filed such final report. The final report purported to be a "statement of account of all money received and paid out as such executor." Such account showed the collection of one $200 note and the further collection of $317.50 in the form of interest upon eight notes, all of which had been scheduled in the inventory. The report showed also that about $167 of the amount so collected had been applied to the payment of certain claims and taxes, and that about $230 had been paid to Wilhelmina, the widow, leaving in his hands $120.75. On the 1st day of the May, 1896, term the following entry was made by the court: "Submitted to the court. $300 allowed in will ordered paid executor. $75 atty. fee allowed executor. Balance of property in hands of executor, after payment of costs and payment of above amounts, to be paid to widow. The executor is authorized to collect from notes in his hands for payment of above amounts and balance of funds to be paid to clerk of court for widow. Upon complying with this order executor to be finally discharged. Executor's final report

approved." This order bore date May 18, 1896. On May 23, 1896, the following record was made:

Received of J. R. Bane for Chas. Burmaster, adm'r, the following described notes and cash as per order of court in estate of Fred Burmaster, deceased:

```
Note signed by Fred Williams..............$500.00
   "      "    "    "         "    .............. 400.00
   "      "    "    "         "    .............. 400.00
   "      "    "    "         "    .............. 125.00
   "      "    "  J. P. Eskeldson et al...... 350.00
   "      "    "  P. Drewelow ............. 600.00
       Cash  .......................... 505.24
```

This 23d day of May, 1896.

Paul Brorby, Clerk Dist. Ct.

Paid to J. R. Bane from above amount of $505.24 the sum of $80.00 May 23—96. See receipt opposite.

Paul Brorby, Clerk.

Received from Charles Burmaster $120.75 being bal. on hand as shown by his final report May 23—96.

Paul Brorby, Clerk.

Paid Charles Burmaster $300.00 as per order of court. See receipt opposite.

Paid J. R. Bane $80.00. Other costs in court and dist. court $20.30. R. Feyerbend $54.50.

And later the following record was made:

Received from Paul Brorby, clerk, all of the above-described notes, and all cash in his hands belonging to the estate of Fred Burmaster, deceased, after deducting costs and atty. fees and fees of executor. Dated this 27th day of May, 1896.

Wilhelmina Burmaster.

It appears, therefore, from the foregoing that the widow received at this time approximately $2,500 over and above the debts and costs of administration. It appears also that on the same day when Wilhelmina receipted for the notes in question she filed her election to take under her husband's will. Wilhelmina died testate October 10, 1910, and her executor is made defendant in this proceeding.

The contention on behalf of the executor is that Wilhelmina was the absolute owner of the notes for which she receipted, and that she had owned the same from a time prior to the death of her husband, and that she did not acquire the same at all under her husband's will. It is further contended that her claim to absolute ownership was asserted during the pendency of administration of her husband's estate, and that it was adjudicated in her favor by the order of discharge of executor. It is made to appear that in March or April, 1896, she filed a petition and served notice thereof upon the executor of her husband, wherein she averred that the notes listed by the executor in his inventory were her own absolute property, and she prayed an order to that effect. This petition was on file and undisposed of on May 18, 1896, when the order approving the final report of the executor and ordering his discharge was entered, as above shown. The petition as filed purported to be a separate action in equity. On May 19, 1896, the following entry was made in such action: "Settled." Oral evidence was received on the trial below, subject to objection, tending to show a parol settlement to the effect that plaintiffs' allegations in such petition were conceded.

The points relied on by the appellants are grouped into two general heads: (1) That the record, on its face, shows an adjudication in favor of the decedent which is a bar to the present contention of the plaintiffs; and (2) that the court should have found, in the light of oral evidence, that the notes receipted for by Wilhelmina were in fact her own absolute property.

So far as the actual record is concerned, it is clear to us that it does not disclose an adjudication favorable to the appellants. The notes came into the possession of the executor of the husband as the property of his estate. He listed them as such in his inventory and was accountable for them. They consisted largely of notes not yet due. It was consistent with the terms of the will that after the payment of debts

and expenses the remainder of the notes should be turned
over to the widow. Presumably her use of the property would
consist in collecting for herself the interest thereon. It is
argued by appellants that the court could have required a
bond from her, or might have appointed a trustee to preserve
the property. But the court was not required to adopt such
course, and it did not adopt it. It had equal power to order
that the unexpended estate be paid to the widow. The fact
that by the order of the court the notes were held chargeable
for the payment of expenses of administration would be incon-
sistent with the recognition of absolute ownership in the
widow. The form of the receipt signed by the widow was not
consistent with such claim. It is urged at this point that she
was not familiar with the English language. But she was
represented by an attorney who was. Looking only to the
probate record introduced in evidence, it seems to us to dis-
close that the property was awarded to the widow in pur-
suance of the terms of the will, and it appears from her
receipt that she received it as such.

Turning to the equity suit, the only record we have there
is the word "settled." This is evidence of a settlement, but
not of an adjudication.

Granting that in an appropriate case oral evidence may
be received to throw light upon an obscure record entry, such
evidence could not be permitted to contradict the record entry.
*Reed v. Lane*, 96 Iowa, 454; *Redhead v. Baker*, 86 Iowa, 254;
*Giddings v. Giddings*, 70 Iowa, 486; *Fowler v. Doyle*, 16
Iowa, 534. As an abstract proposition the appellants do not
contend otherwise; but they do contend that they are entitled
to show by parol evidence in this case the terms of the parol
settlement entered into in 1896. Without such evidence the
record entries of the probate court, which we have already
set forth, clearly sustain the petitions of the plaintiffs. The
importance of such evidence to the appellants consists in the
fact that it tends to contradict such record entries of the
probate court. The receipt signed by Wilhelmina upon the

probate record was in no manner impeached.   It was in accord with the entire probate record.   Upon the record before us we think the trial court properly held such receipt and the probate record to be determinative of the rights of the parties herein, although we are not wholly agreed in our reasons for such result.   Some members of the court deem the oral evidence inadmissible.   The others deem it admissible, but insufficient to overcome the written receipt and the record.

The order of the trial court is therefore *Affirmed.*