[Sac. No. 1935.   In Bank.—September 30, 1913.]

## GEORGE WATSON et al., Appellants, v. CHARLES LAWSON et al., Respondents.

WATERS AND WATERCOURSES—SUIT TO DETERMINE CONFLICTING WATER-RIGHTS—FINDINGS.—If in a suit to determine water-rights the complaint alleges that the stream in question runs across a portion of the plaintiff's land, and this fact is admitted by the answer, no finding thereof is necessary.

ID.—RIPARIAN RIGHTS—EXTENT AND PRIORITY.—One whose land is in part at least riparian to a creek is entitled to a reasonable use of its waters, on that part of his land which is riparian, equally with other riparian owners; and his right is superior to that of mere appropriators for use on nonriparian lands who have not acquired by prescription or grant from him the right to such use.

Id.—Suit to Determine Water-rights—Adjudication Between Prede-
cessors in Title—Conclusiveness.—In an action to determine con-
flicting rights to the waters of a stream and to fix the proportions
of the water to which the parties are respectively entitled, a judg-
ment in a prior action between their predecessors in title, wherein
the plaintiff sought an injunction and damages in the matter of
alleged diversion and obstruction of the waters of the stream, is
not conclusive, where it is clear from the whole record in the prior
action that such judgment therein, which was that the plaintiff
take nothing, was not intended as an adjudication that he had no
rights in the waters.

Id.—Judgment Fixing Water-rights—Requisite Certainty.—In an ac-
tion to quiet title to waters in a stream and determine the propor-
tions of the waters to which the parties are respectively entitled, the
judgment should, so far as possible, ascertain and declare the rights
of each party in the water, specifying the quantity, either by absolute
measure or by definite proportion of the whole, and, if necessary or
appropriate, the manner and times of use and diversion, so that if
the decree is observed by each party he may have his just and lawful
share and the water may be so applied as to produce the least waste
and the greatest beneficial use.

Id.—Construction of Judgment—Reference to Law Regulating
Rights of Parties.—A judgment must be construed with reference
to the law regulating the rights of the parties.

Id.—Complaint With Only One Good Count—Presumption in Favor
of Judgment.—Where only one count of the complaint is sufficient
to support a judgment, it will be presumed, on appeal, that the
judgment was based solely on that count.

Id.—Interpretation of Judgment—Examination of Record.—In case
of doubt regarding the signification of a judgment, or any part
thereof, the whole record may be examined for the purpose of re-
moving the doubt. When it admits of two constructions, that one
will be adopted that is consonant with the judgment that should
have been rendered on the facts and the law of the case.

APPEAL from a judgment of the Superior Court of Lassen
County. Stanley A. Smith, Judge presiding.

The facts are stated in the opinion of the court.

N. J. Barry, R. M. Rankin, and W. F. Williamson, for
Appellants.

Pardee & Pardee, White, Miller & McLaughlin, and C. E.
McLaughlin, for Respondents.

SHAW, J.—The defendants appealed from the judgment within sixty days after its rendition. The evidence and proceedings at the trial are embraced in a bill of exceptions.

The complaint alleges that the plaintiffs, George and Frank Watson, own certain lands, being about four hundred acres in extent, that plaintiff, Fred S. Watson, owns other lands to the extent of two hundred and eighty acres, that Gold Run Creek flows across the land of Fred S. Watson, that plaintiffs are the owners of the right to divert one-half of the waters of said creek and use the same upon their land, that the same has been so used by plaintiffs and Thomas Watson, their predecessor in interest ever since the year 1859, openly, continuously, and adversely to the defendants, that in July, 1906, the defendants removed the diversion dam of the plaintiffs and deprived plaintiffs of said water, claiming the right to do so, and that they threaten to continue such deprivation. The prayer is for a decree defining the rights of the parties to the waters of the creek, establishing plaintiffs' rights to one-half thereof and enjoining defendants from interfering therewith.

The defendants answered denying the alleged rights of the plaintiffs to the waters and their continuous and adverse use thereof. They also deny that the defendants claim the right to use all the waters of the creek, or the right to entirely deprive the plaintiffs of the use thereof, or that they claim that plaintiffs have no right to the waters of said creek, and they allege that the defendants do assert that their own rights to said waters are prior and superior to those of the plaintiffs.

The defendants alleged affirmatively that the creek flows through their lands and that as riparian owners they have the right to the use of the waters thereof and have always claimed and exercised the right to said waters as a right superior to that of plaintiffs. They further alleged that on August 21, 1873, Thomas Watson, being then the owner of the lands now owned by plaintiffs, began an action in the district court in and for Lassen County against one Cornell and others, predecessors in interest of defendants, and including the defendant Lawson, to enjoin them from interfering with his use of said waters on said land, that in said action the court found that, as against said defendants, said Watson had never acquired any prescriptive right to any portion of said waters and that

judgment was given therein for said defendants. The answer prayed for judgment that plaintiffs take nothing, that defendants be declared to have the right to the flow of said ·creek over their lands without material diminution, and that plaintiffs be enjoined from taking any of said waters until the needs of the defendants are fully supplied therefrom.

The court found that a portion of the lands of the plaintiff, Fred S. Watson, situated in the east half of the northeast quarter of section 17, is riparian land, and that plaintiffs had no right to the use of any of said water upon any other part of their lands. Judgment was given that George and Frank Watson have no right to said waters, that they be perpetually enjoined from diverting or using the same, that Fred S. Watson had no right thereto except upon the one parcel aforesaid, that he be enjoined from any other use, and that defendants are entitled to divert from the stream sufficient water for the proper irrigation of so much of their lands as they have heretofore irrigated therewith.

Upon the trial evidence was introduced tending to show that in 1856 three persons, Elliott, McMurtry, and Hasey, had settled upon all the lands now owned by the plaintiffs and defendants herein, respectively, that said land was then unsurveyed land of the United States and was riparian to and irrigable from said creek, that they then claimed all of its waters for use upon said lands and made ditches to carry said waters to and upon the same, that afterward they sold their possessory rights in said lands in separate parcels to the respective predecessors in interest of the present plaintiffs and defendants, that Thomas Watson in 1857, purchased from them the lands now owned by the several plaintiffs and which they have acquired from him, that the several purchasers from said original settlers and their respective successors continued in possession of the lands so acquired, and each subsequently, and subsequent to July 26, 1866, acquired the title of the United States to his particular parcel, that Thomas Watson, immediately after his purchase from said settlers, began the diversion and use of the waters of the creek upon his said lands, claiming the right to do so, and that he and his successors, the plaintiffs, have ever since continued such diversion, use, and claim.

The defendants introduced in evidence over plaintiffs' objection, the judgment-roll in the action of Watson v. Cornell et al., aforesaid. Thereupon they moved to strike out all the evidence introduced by plaintiffs tending to show an appropriation or right to the use of the waters by plaintiffs or their grantor, Watson, prior to May 3, 1877, the date of the final judgment in the aforesaid case of Watson v. Cornell. The court held that the judgment was an adjudication that Watson had at that time no rights in said waters, and thereupon granted the motion to strike out said evidence. These rulings are assigned as error, and we think the assignment is well taken.

The prayer of the complaint in that action was for an injunction restraining defendants therein from obstructing the flow of said waters through the plaintiff's ditches to his said lands and to recover the damages alleged to have been caused by the single interference alleged to have occurred on June 11, 1873. The court first found that Watson had used the water on his lands continuously every year from 1857 to 1873, and that he had suffered five hundred dollars' damages from the act of the defendants in turning off the water. Judgment was given enjoining the defendants from obstructing the flow of the water in the plaintiff's ditches and for the damages found. On appeal to this court, this judgment was reversed on the ground that the findings did not cover all the issues, and the cause was remanded with directions to the lower court to find upon all the material issues, or in case of inability to do so, to try the action anew. (*Watson* v. *Cornell,* 52 Cal. 92.) In the opinion the court mentioned as among the material issues not covered by the findings: 1. The capacity of plaintiff's ditches; 2. The amount of water actually appropriated by plaintiff for use on his land and the time of such use; 3. Whether plaintiff had acquired the right thereto, as against either defendant, by prescription; 4. Whether defendants' diversion was by permission of the plaintiff.

The lower court did not find a new trial necessary and made new findings upon the evidence taken at the first trial. Among other things it found that Elliott, McMurtry, and Hasey in 1856 settled upon and claimed all the lands of the respective parties as one ranch, the same being then unsurveyed public land, and in that year constructed two ditches

by which to use the waters of Gold Run Creek upon parts of the lands, that ditch No. 3, claimed by said Watson, was made by said parties in June, 1857, that in July, 1857, they sold to Watson a parcel of land not bordering upon the stream, but to which ditch No. 3 would carry the water, that in 1858, Watson, with their consent, enlarged and extended said ditch and that every year thereafter, by means thereof, he irrigated his land with the waters from said creek, that the plaintiff and defendants were the grantees of the possessory rights of said original settlers, that ever since the year 1858 Watson and all the defendants and their respective grantors, by means of dams, ditches, and sloughs, had spread the waters of said creek over their said lands and used the water for irrigation thereof, and that prior to 1873 they had all used the said waters "without dispute and in a neighborly way," that "as the season would advance and the water fail so that all could not have a full supply, one would use it a few days and then another until all were served."

The court then found further that the water was unusually scarce in 1873, that for a few days before June 11th, the date of the alleged interference by the defendants, the plaintiff had diverted nearly all the water so that none ran to the defendants below, that plaintiff, being told of this deprivation, consented that they should have all the water from ditches 2 and 3 for one week, with the understanding that if he could not do without the water longer he would then inform them to that effect. With this permission they began taking the water previously running in plaintiff's ditches and that within ten days from that time the water altogether ceased to run in the creek. On the same date, said defendants without plaintiff's consent and against his protest turned out a portion of the water running in ditch No. 1, but leaving therein for plaintiff's use a stream equal to forty miners's inches measured under a four-inch pressure, which quantity, it otherwise appears, was all that plaintiff was entitled to divert through that ditch. This was followed by a general finding that "as against these defendants plaintiff never acquired the right to any portion of the water of Gold Run by prescription." The conclusion of law and the judgment following it was that plaintiff take nothing by his suit and that defendants recover their costs.

It is clear from the whole record in the case that this judgment was not intended as an adjudication that Watson had no rights in the waters of the creek. The complaint alleged that the creek ran across a portion of his land, and this fact was admitted by the answer. It was therefore an established fact upon which no finding was necessary. His land being, in part at least, riparian to the creek, he was entitled to a reasonable use of its waters on that part thereof, equally with other riparian owners. Such right, of course, was superior to that of mere appropriators for use on nonriparian lands who had not acquired by prescription or by grant from him the right to such use. As an adjudication of the rights in the water, the judgment would have been inconsistent with and unsupported by the facts established by the pleadings and findings. In applying a judgment, "if the language be in any degree uncertain we may properly refer to the circumstances surrounding the making of the order or judgment—to the condition of the cause in which it was entered." (*Ex parte Ambrose,* 72 Cal. 401, [14 Pac. 35]; *Treat* v. *Laforge,* 15 Cal. 41; *Etter* v. *Hughes,* 5 Cal. Unrep. 148, [41 Pac. 790].) A judgment "must be construed with reference to the law regulating the rights of the parties." (*Burnett* v. *Whitesides,* 15 Cal. 37.) Where only one count of the complaint is sufficient to support a judgment it will be presumed, on appeal, that it was based solely on that count. (*Neilsen* v. *Provident etc. Soc.,* 139 Cal. 339, [96 Am. St. Rep. 146, 73 Pac. 168].) "In case of doubt regarding the signification of a judgment, or any part thereof, the whole record may be examined for the purpose of removing the doubt." (1 Freeman on Judgments, sec. 45.) "When it admits of two constructions, that one will be adopted that is consonant with the judgment that should have been rendered on the facts and the law of the case." (1 Black on Judgments, secs. 3, 123; *Peniston* v. *Sommers,* 15 La. Ann. 680.)

Applying these rules to the judgment in *Watson* v. *Cornell,* its meaning and effect are apparent. The declaration in the judgment that the plaintiff take nothing by his suit is, on its face, uncertain, so far as it purports to be a determination of property rights. It does not describe the right adjudicated. The pleadings and findings must be examined to ascertain what rights are determined. It must be presumed that the

CLXVI Cal.—16

court intended to adjudge correctly in law upon the facts of the case. Hence, an interpretation of the general language of the judgment which would make it contrary to the law applicable to the facts must be rejected. If from the facts, it appeared that Watson had no right at all to the water, the judgment could be supported on that ground and could be given the effect of a determination of that proposition. Inasmuch as the pleadings admit that he had a right as a riparian owner to a reasonable use of the stream, a judgment that he had none would have been clearly erroneous and this interpretation must be rejected. It may be added that even upon the question of his right by prescription, the general statement that he had not acquired such right is not entirely in harmony with the specific findings above set forth. Apparently all the parties had for many years recognized the right of Watson to a part of the water during the greater part of each irrigating season and the disputes arose only when the water became scarce toward the end of the season. The relief sought by the action being considered, the reason for the denial thereof and the effect of the judgment is plain. The plaintiff sought to enjoin the defendants from diverting the water from the stream and from obstructing its flow therefrom into plaintiff's ditches, together with damages for the alleged obstruction of June 11, 1873. The court, in effect, found that prior to 1873, for sixteen years each of the parties had used a share of the water without dispute or controversy, and that the alleged interference of defendants in June, 1873, was not an interference at all, but was done with his permission and by his agreement. The only interference complained of being thus shown to have been made with his permission, it necessarily followed that he had no right either to an injunction or a judgment for damages. There being no other facts established which would justify the judgment denying relief, it must be deemed to have been based on these facts alone and these facts, only, are to be considered as having been determined by the judgment. For these reasons the evidence of a previously acquired right should not have been stricken out and the judgment should not have been treated as an adjudication of the then existing rights of Thomas Watson to the water of the creek.

We are also of the opinion that the objections that the judgment in the present case is uncertain in its terms is well taken, at least so far as Fred S. Watson is concerned. If, as a matter of law and fact, George and Frank Watson have no rights at all in the stream, the uncertainty would, of course, be immaterial to them. But if it should turn out that they have some rights to the water during at least a part of each season, the judgment should be made specific as to them as well as to Fred S. Watson. The plaintiffs are here asserting a right to only one-half of the waters. They assume that the defendants may also have rights thereto and they ask a decree defining the rights of all parties and establishing their own rights. This, indeed, is the most important object of the action, the office of the injunction being merely to preserve and protect the rights when so defined. In ordinary seasons, the creek appears to have water enough to supply all parties until about the middle of June, and to cease to flow entirely by the middle of July. In such cases disputes as to the quantity of water to which each party is entitled and as to its use when the stream is so small that its full flow is necessary to an economical or effective use thereof will usually arise as the stream diminishes. Unless the parties can agree, their only recourse for a fair and just settlement of their conflicting claims is to the court and by means of an appropriate action for the adjudication thereof.

The judgment in such a case should, so far as possible, ascertain and declare the rights of each party in the water, specifying the quantity, either by absolute measure or by definite proportion of the whole, and, if necessary or appropriate, the manner and times of use and diversion, so that if the decree is observed by each party he may have his just and lawful share and the water may be so applied as to produce the least waste and the greatest beneficial use. There are numerous precedents for this course. (*Riverside Water Co.* v. *Sargent,* 112 Cal. 233, [44 Pac. 560]; *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 186, [22 Pac. 76]; *Harris* v. *Harrison,* 93 Cal. 680, [29 Pac. 325]; *Wiggins* v. *Muscupiabe etc. Co.,* 113 Cal. 182, [54 Am. St. Rep. 337, 32 L. R. A. 667, 45 Pac. 160]; *Southern Cal. I. Co.* v. *Wilshire,* 144 Cal. 70, [77 Pac. 767].) The judgment of the court does not declare the quantity to which the defendants are entitled otherwise than

by the statement that it is to be ''sufficient water for the proper irrigation of so much of their several lands as they have heretofore irrigated with such water.'' There is nothing to show how much of their lands they have heretofore irrigated nor how much water such irrigation would require. The quantity allowed to Fred S. Watson is equally indefinite. If the water was abundant so that a mere declaration of their rights would settle the controversy existing, this indefinite statement might be permissible. But here it is clear that the water is at some periods insufficient for the irrigation of all the lands which have customarily received it, and a definite statement of the quantity allowed to each, or a definite means of ascertaining the same, is necessary to afford complete relief.

The judgment is reversed, and a new trial ordered.

Angellotti, J., Sloss, J., Melvin, J., Henshaw, J., and Lorigan, J., concurred.