HAWKEYE SECURITIES FIRE INSURANCE Co., Plaintiff, Appellant, v. UNITED INVESTMENT COMPANY et al., Defendants, Appellees.

IN RE THE DISCHARGE OF H. R. HOWELL, Receiver, Appellee.

No. 41740.

DECEMBER 12, 1933.

PETITION FOR REHEARING WITHDRAWN AND DISMISSED

FEBRUARY 24, 1934.

Bradshaw, Schenk & Fowler, for appellant.

Lehmann, Hurlburt & Hossfeld, for appellee United Inv. Co.

Cunningham & Scott, for appellee Howell.

ALBERT, C. J.—The property involved in this transaction was what is known as the Tudor Apartment building located in the city of Des Moines. On November 24, 1920, the Commercial Building & Securities Company, an Iowa corporation of which H. R. Howell was president, was the owner of said property, and on that date a first mortgage in the amount of $85,000 was executed on said property to the appellant, the Hawkeye Securities Fire Insurance Company, and a second mortgage to the Central State Bank. The fee to

this property was later sold to the appellant, and appellant subsequently acquired the interest of the Central State Bank. The Hawkeye Securities Fire Insurance Company later instituted proceedings for foreclosure against the United Investment Company which went to decree and foreclosure on January 16, 1931. Sheriff's sale was held February 21, 1931; plaintiff being the purchaser at such sale.

As a part of this proceedings, H. R. Howell was appointed receiver and took possession of said property, cared for the same, and collected the rents therefrom. On September 30, 1931, Howell, as receiver, filed a final report and asked for his discharge. On October 10, 1931, plaintiff filed a resistance to the final report and application for discharge, and an application was filed by the plaintiff for the appointment of a new receiver, and a resistance filed thereto, and on February 10, 1932, Howell filed another final report and application for a discharge. On February 18, 1932, plaintiff filed a resistance thereto, in which, among other things, it claimed that there were certain unpaid taxes which should have been paid by the receiver, and asking an order requiring the receiver to pay said taxes.

Plaintiff then amended its resistance to the final report, setting up the claim that there were certain repairs which should have been made by the receiver amounting to $755.10, and asked that the receiver be required to pay to the plaintiff said sum for necessary repairs on said property.

Howell then filed a supplemental report, in reply to plaintiff's resistance to the final report, and the issues thus made came on for trial, resulting in a holding that the Hawkeye Securities Company was entitled to $107.98 in full compensation for failing to maintain the mortgaged premises, and denying the claim of the plaintiff that the receiver should pay the taxes in controversy, amounting to $2,395.91; hence this appeal.

There is no dispute that the taxes and assessments against said property for the year 1931 (payable in 1932) were the amounts specified, and that the receiver refused to pay the same. The original foreclosure decree, among other things, provided:

"The court further finds that a receiver was appointed by this court on the 29th day of December A. D. 1930, to take charge of the mortgaged property as such receiver and that by agreement of the parties, H. R. Howell was found to be an acceptable person as such

receiver. * * * It is therefore ordered, adjudged and decreed by the court that the receivership herein be made permanent, and that the receiver take charge of said mortgaged premises, rent the same, collect the rents and profits, pay necessary expense connected therewith, pay taxes and assessments as they become due, * * * make necessary repairs under the order of this court and do such other duties as usually devolves on the receiver in such cases under the orders of this court.

"That said receivership shall continue * * * from the date of appointment to the end of the year of redemption of said property. * * * The court retains jurisdiction of the action and the receivership during the pendency of said receivership and the year of redemption."

The central point of this controversy has to do with that part of the decree which provides that the "receiver shall * * * pay taxes and assessments as they become due," etc.

The original mortgage, among other things, provides:

"Said party of the first part further agrees to pay any and all prior liens of every kind whatsoever that may at any time exist upon said property, paramount to the lien of this mortgage, and any and all taxes and assessments that may at any time be or become a lien upon said premises, including any and all special assessments before they become delinquent."

After the foreclosure had been commenced, the question of the receivership was a subject of discussion between the parties. The evidence makes fairly satisfactory proof that several conferences were held between the interested parties as to the receivership. Howell, who was connected with the defendants, was a candidate for this receivership, and it was agreed between the parties that he should be chosen for this position; that the plaintiff would bid in the property at the execution sale for the full amount of the judgment, interest, and costs so there would be no deficiency. It was agreed that the plaintiff would bid in the property at the execution sale, and it seems to be fairly evident from the testimony that in these conversations the question of taxes was discussed, and it was understood that the property was to pass to the plaintiff free from incumbrance (except a certain mortgage) and taxes.

The mortgage on this property which was foreclosed did not

contain a receivership clause, and neither did it provide for a pledging of the rents, incomes, and profits, but, regardless of this, all the parties interested had the right to and did make the agreement above referred to. We know of no provision of the law which would prevent these parties from making such an agreement, and, having done so, they ought to be held in law to abide the provisions thereof. The court in its decree recognized the fact that an agreement had been made between these parties with reference to this receivership, and it 'is our conclusion that same should be enforced. But the appellant insists that the testimony with reference to the understanding between these parties, which took place before the appointment of Howell as receiver, was incompetent and immaterial and a violation of the parol evidence rule.

 It appears from the record that the taxes for 1930, payable in 1931, were paid by the receiver. The taxes for 1931, payable in 1932, are unpaid, and the question is whether or not the receiver should pay these latter taxes.

The claim of the appellant is that the use of the word "due" in the portion of the decree above set out is ambiguous, and therefore subject to oral explanation. Defendant argues that, under the statutes of this state, these taxes were not "due" at the time of the expiration of the year of redemption, which was February 21, 1932. The first question for determination is whether or not the decree is ambiguous because of the use of the word "due."

In 19 C. J. 818, it is said:

"According to the concensus of judicial opinion, the word has a double meaning: (1) That the debt or obligation to which it applies has by contract or operation of law become immediately payable; (2) a simple indebtedness, without reference to the time of payment, in which it is synonymous with 'owing,' and includes all debts, whether payable *in praesenti* or *in futuro*."

Turning now to the statutes of the state, section 7210, Code 1931, provides:

"No demand of taxes shall be necessary, but it shall be the duty of every person subject to taxation to attend at the office of the treasurer, at some time between the first Monday in January and the first day of March following, and pay his taxes in full, or one-half

thereof before the first day of March succeeding the levy, and the remaining half before the first day of September following."

According to section 7147, it is the duty of the county auditor to make up the tax list and deliver the same to the county treasurer on or before the 31st day of December, and such list is sufficient authority for the treasurer to collect taxes therein levied.

It is evident, therefore, under these two sections of the Code, that, from the 1st day of January to the 1st day .of March following, such taxes are "owing" by the property owner and may be paid at any time during said period. Under one definition, therefore, as above set out, it may be properly said that these taxes are "due." The words "due" and "duty" are derived from the same root, according to Webster's International Dictionary, and "duty" is equivalent to "payment due." So far, therefore, this question is easy to answer.

But section 7211 provides:

"In all cases where the [first] half of any taxes has not been paid before the first day of April succeeding the levy, the amount thereof shall become delinquent from the first day of April after due; and in case the second installment is not paid before the first day of October succeeding its maturity, it shall become delinquent from the first day of October after due."

We conceive that section 7211 was enacted for the purpose of fixing a delinquent date, and in fact does not in any way conflict with section 7210; thus distinguishing between "due" and "delinquent."

Section 7214, a later enactment, reads as follows:

"If the first installment of taxes shall not be paid by April first, said installment shall become due and draw interest, as a penalty, of one per cent per month until paid, from the first day of April following the levy; and if the last half shall not be paid by October first following such levy, then a like interest shall be charged from the date such last half became delinquent."

The purpose of this section, if we are able to determine the intent of the legislature, was not intended in any way to conflict with sections 7210 and 7211, but was enacted for the purpose of fixing a date after which the penalty should be charged against one who fails to pay his taxes by the 1st day of April; or, in case taxes are

paid in two installments, to put a penalty for a failure to pay the first installment by the 1st of April and the second installment by the 1st of October. Thus construed, these sections of the statute are not in conflict with each other, and, under such construction, the taxes in controversy were due before the expiration of the year of redemption; hence should have been paid by the receiver.

■■■ II. Much attention is devoted in the briefs and arguments to the question of whether or not the plaintiff was entitled to prove the agreement between the parties in relation to the matter of taxes as against the parol evidence rule.

It is, of course, the general rule that parol evidence is not admissible to modify or contradict a judgment. See 22 C. J. "Evidence," section 1388; 34 C. J. "Judgments," 803.

But there is an exception to this rule where ambiguous words are used in the decree and parol evidence is admissible to establish what the court actually decided. Porter v. Sigler, 1 G. Greene, 261; Weaver v. Stacey, 105 Iowa 657, 75 N. W. 640; In re Estate of Burmaster, 161 Iowa 116, 141 N. W. 55; Paul v. Barnbrook, 58 Ind. App. 607, 106 N. E. 425; Jones v. Robb, 35 Tex. Civ. App. 263, 80 S. W. 395; Bente v. Sullivan, 52 Tex. Civ. App. 454, 115 S. W. 350; Taylor v. McCowen, 154 Cal. 798, 99 P. 351; Jordan v. McDonnell, 151 Ala. 279, 44 So. 101; Watson v. Lawson, 166 Cal. 235, 135 P. 961; 22 C. J. 1173, 1177, 1279; 10 Enc. of Evidence 972; 34 C. J. 506.

But, having reached the conclusion above set out, as to the interpretation of our statutes, we do not deem it necessary to pursue this subject further.

III. There were certain items of repairs claimed by the plaintiff, a part of which were allowed by the court and others rejected, and appellant insists that the rejected items should have been allowed. We are disposed to agree with the ruling of the district court at this point in relation to such items.

Reversed in part; affirmed in part.

STEVENS, CLAUSSEN, KINTZINGER, and DONEGAN, JJ., concur.

EVANS, KINDIG, ANDERSON, and MITCHELL, JJ., dissent.

EVANS, J. (dissenting)—I do not concur in the majority opinion. This is an appeal from a provisional order made by the district court in a mortgage foreclosure suit. The suit was brought by the

plaintiff upon a mortgage for $85,000. The mortgage covered a certain building known as the Tudor Apartments, located in the city of Des Moines. This building comprised thirty-six apartments. Upon the institution of the foreclosure proceeding, a receiver was appointed under section 12713 of the Code for the purpose of conserving and managing the property pending the litigation. The controversy relates to the final report of the receiver. The plaintiff filed certain objections thereto. The principal objection thus filed was overruled by the trial court. I think that such order should be affirmed.

Plaintiff's foreclosure suit was commenced on December 26, 1930. The mortgage in suit bore date of November 24, 1920, and became due on December 1, 1930. The defendant, Commercial Building & Securities Company was the maker of the mortgage. The defendant United Investment Company had become the fee owner of the property subject to the mortgage. The defendant Central National Bank & Trust Company was the holder of a second mortgage upon the same property. This was executed by the same maker and at about the same time as the plaintiff's mortgage.

Manifestly the property was of such a character as to require the constant attention of some supervisor. It was upon this ground that an application was made by the plaintiff for the appointment of a receiver. H. R. Howell was appointed as such receiver. He was the president of the United Investment Company, the then fee owner of the property. The receiver was appointed on December 29, 1930. Decree of foreclosure was entered on January 16, 1931. Execution sale was had on February 21, 1931. The mortgage in suit did not purport to cover rents and profits during the redemption year; nor did it purport to create a lien upon such rents and profits; nor did the petition assert such a lien. Paragraph 13 of the petition alleged:

"That the buildings upon said real estate consist of a large apartment building, occupied by numerous tenants who require continuous attention, and the said building and improvements require constant supervision by an overseer for the purpose of keeping said building in proper repair and fit for occupancy, and that a receiver should be appointed therefor."

The prayer for receiver was:

"That a receiver be appointed to take charge of the property

'and collect the rents, income and profits therefrom and apply the same on the mortgage debt, costs, attorney's fees, insurance and taxes, as may be ordered by the Court.' "

We note this feature of the record at this point because the appellant's argument implies that it could have applied the rents, issues, and profits of this apartment building during the year of redemption upon a deficiency judgment if it had saved one. The receiver was appointed by the following order:

"It is therefore ordered that H. R. Howell, be and is hereby appointed a receiver in this action, under the orders of this court, and is authorized to perform the duties of a receiver in relation to said premises upon the filing of a bond in the sum of $15,000.00, with sureties to be approved by the Clerk of this court, the said receiver to qualify as provided by law. The said Receiver, H. R. Howell, shall take charge of the real estate involved in this action; rent said premises to suitable tenants; make such repairs as the Court may order; *prevent waste;* keep said premises insured; pay the taxes and special assessments thereon, and perform all other things that are the usual and proper duty of a receiver of mortgaged real estate, all under the order of this Court."

The judgment entered was *in rem* only. Nor was there any claim by plaintiff for a personal judgment against any one. The decree confirmed the order of appointment of the receiver and directed:

"That the Receiver take charge of said mortgaged premises, rent the same, collect the rents and profits, pay necessary expense connected therewith, pay taxes and assessments as they become due, keep the property insured at least for the amount of the mortgage lien, make necessary repairs under the order of this court, and do such other duties as usually devolves on the Receiver in such cases under the orders of this court.

"That said receivership shall continue and be subject to the orders of this court from the date of appointment to the end of the year of redemption of said property, in the event the said Receiver for any cause shall fail to perform the duties herein imposed, then the court may immediately appoint a successor for the purposes of carrying out the intention of this receivership. The court retains

jurisdiction of the action and the receivership during the pendency of said receivership and the year of redemption."

At the execution sale, the plaintiff bid the full amount of its judgment, and became thereby the execution purchaser. The legal effect of these proceedings as between the plaintiff and the fee owner was that such fee owner was entitled to the beneficial use of the property, including its rents and profits, during the year of redemption.. The plaintiff was entitled to the protection of the property against waste or spoliation. It was not entitled to resort to its rents and profits for the collection of its claim. Such claim was fully collected by its bid. Pursuant to this idea, the receiver on September 30, 1931, filed his report and asked for his discharge. To this report objections were filed. On February 10, 1932, a further final report was filed by the receiver to which also objections were filed by plaintiff. These objections set up certain items of alleged waste. Some of these were allowed by the court, and others were overruled. These items are not pressed on this appeal. The principal objection made by the plaintiff was that the receiver had failed to pay the taxes which had become payable in 1932. Such taxes were not delinquent. The amount of such taxes was more than $2,300. Whether the plaintiff, as an execution purchaser on February 21, 1931, was entitled to demand that the taxes, which became a lien on the property in January, 1932, should be paid by the receiver out of the rents and profits of the mortgaged property during the year of redemption, is the fighting question presented to us. The burden was upon the plaintiff to establish its contention. It urges the same upon two general grounds: (1) That its right thereto was established by the terms of the order of appointment of the receiver on December 29, 1930; (2) that, by private and parol arrangement prior to the appointment, Howell, as an applicant for the appointment as receiver, *promised* the plaintiff that he would pay such taxes and that the plaintiff consented to his appointment as receiver on such consideration. We have above set forth the language of the appointing order and of the decree in that regard. It will be noted therefrom that the duties devolved upon the receiver were so devolved upon him as an officer of the court. They were summed up as those which "usually devolves on the Receiver in such cases under the orders of this court." In no sense was the specification of duties to be performed a finality. The appointment was purely an administrative

order. It was not an adjudication of any issue in the case. Theoretically, all specified duties were to be performed under the orders of the court and were subject to approval or disapproval until his final report and discharge. The plaintiff was not entitled to add to its security by resort to the fruits of the year of redemption. Nor do we find anything in the language of the appointing order or of the decree which purports to extend such a gratuity. The plaintiff was entitled to the protection of the integrity of the property which it had purchased at execution sale. The property was of such nature that waste or depreciation could readily be perpetrated upon it by mere neglect. As against this, plaintiff was entitled to protection. Plaintiff appears to rely upon certain language of the mortgage, which purports to define a default as follows:

"In case default shall be made in the payment of any installment of interest at the time or times above specified for the payment thereof, or in case of default in the payment of taxes, or any part thereof, before the same *become delinquent*."

It is to be borne in mind at this point that, in so far as the appointment of the receiver was a part of the decree or judgment, if such, it was fully discharged and satisfied by the execution bid. The plaintiff has fully exhausted his right of enforcement of the decree, as such. The plaintiff is necessarily confined in its complaint to some ground that involves waste and a violation of duty of the receiver, as conservator of the property. Even if nonpayment of delinquent taxes should be deemed an act of waste, yet no delinquent taxes are involved in this controversy. The taxes, which would have become delinquent during the year of redemption were all paid by the receiver. The fee owner has submitted to such payment without objection. Whether the fee owner could have successfully resisted such payment, we need not now consider.

II. We come now to the plaintiff's most strenuous contention. This is that Howell bargained with it for the appointment as receiver and as a part of such bargain promised to pay such taxes. Evidence was introduced to that effect. This contention was vigorously denied by Howell. Appellant's argument at this point seems to assume that it itself had the exclusive right of selection of receiver and that the consideration for its selection of Howell was the alleged promise on his part. Howell, as prospective appointee, had no right to promise anything. He was assuming an obligation as an officer

of the court. He gave a $15,000 bond for his faithful performance. The voice of the plaintiff in his selection could be no louder than the voice of the fee owner. All this the plaintiff knew. The receiver was under the constant direction of the court. The rents, which were to come into the hands of the receiver, did not become his property. It was trust property and was subject to the just claims either of the plaintiff or of the fee owner. Neither contender could acquire any right by a mere parol agreement with the receiver either before his appointment or thereafter. The court rejected the evidence of this alleged parol agreement with Howell as being without force or effect.

To illustrate the incongruity of appellant's contention, let us suppose that the junior lien holder had redeemed from the execution sale. The plaintiff would thereby have received the full amount of its bid with interest. The redemptioner would step into the shoes of the plaintiff under the certificate of sale. Could the redemptioner claim the benefit of the alleged oral agreement between Howell and the plaintiff, and could he require a payment of the after-accruing taxes on the strength of Howell's alleged promise to the plaintiff? We suspect that a negative answer would be readily conceded. To say that the plaintiff could claim the benefit of the contract and that its redemptioner could not, would be to say that the plaintiff could make itself a preferred and favored bidder at the execution sale by virtue of a mere contract or understanding with the receiver.

Appellant argues nevertheless that by the terms of the appointing order the receiver was required to "pay the taxes and special assessments thereon", and that by the provision of the decree he was required "to pay taxes and assessments as they became due". Stress is laid by the appellant on the use of the word "due" in this connection. Its contention at this point is that the taxes which became payable on January 1, 1932, became "due" within the meaning of the decree and that therefore the receiver was under obligation to pay them. Argument is devoted to the proper interpretation of the word "due" in this connection. Undoubtedly this word is used in somewhat different senses in its different relations to a context. The indiscriminate use of the word in different senses is to be found in the common parlance of the lay world to a much greater extent than in legal phraseology. For the purpose of this case the statute has put its interpretation upon the word. Section 7214 provides:

"If the first installment of taxes shall not be paid by April first, said installment *shall become due* and draw interest, as a penalty," etc.

The effect of the foregoing is to say that, though taxes became payable on the 1st of January, yet the payment is optional with the taxpayer until the last day of March when it becomes mandatory. On the 1st day of April it becomes delinquent and draws a penalty. The situation of the taxpayer is analogous to that of a debtor, who has executed his promissory note payable "on or before" March 31. Though payable on any date at the option of the maker, the note is said to fall *due* on March 31. It becomes delinquent and suable on April 1. It is not suable until the due date is wholly expired. It is suable immediately thereafter. Theoretically there is but a second of time between the expiration of a due date and the beginning of delinquency. However, we need not dwell upon this feature of the case nor predicate decision upon it for the reasons already indicated herein.

As an execution purchaser, the plaintiff was not entitled to require payment of taxes accruing upon the property after the execution sale. Its right in that respect was neither greater nor less than the right of any other successful bidder would have been, even though such successful bidder had been a disinterested third party. Its bid was necessarily predicated upon the assumption that it must assume all after-accruing taxes. The statute makes provision, which permits it to pay the same and to charge the same against the property in the event of redemption. To sustain the present claim of the plaintiff would be to add $2,300 to its security after its judgment had been fully paid and satisfied.

I think the trial court properly overruled the plaintiff's objection to the receiver's report and that its order should accordingly be affirmed.

KINDIG, ANDERSON, and MITCHELL, JJ., join in this dissent.